GEORGE WILLIAMS V. STATE

No. 31,217. February 24, 1960

Motion for Rehearing Overruled April 13, 1960

C. E. Gauntt, Georgetown, for appellant.

J. R. Owen, County Attorney, Georgetown, and Leon Douglas State's Atorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder; the punishment death.

Kelly Frederick testified that the appellant rode with him in his car to work on May 1, 1959, as he had for about two months, that he picked him up early in the morning and soon thereafter appellant exhibited a pistol and told him to keep driving as he directed. After driving several miles they stopped about 8:30 A.M. on a rural road near Rice's Crossing in Williamson County; that appellant ordered him out of the car and told him he was going to kill him so he could not report to the officers, then shot at him several times as they moved around the car; that he ran and appellant followed him in the car and continued shooting at him from the car, appellant suddenly stopped jumped out and began chasing Frederick around the car at which time Frederick got in the car and started moving it and when appellant failed to open the door he shot through the glass of the window and the bullet went through Frederick's cap and lodged in his hair. He further testified that he reported to the officers and showed them the hole in his car and the bullet that he found inside his cap, and later pointed out the place to the officers where the appellant made him get out of the car and tried to shoot him with a pistol.

Ted Merek, a garage owner at Rice's Crossing, testified that he sold Kelly Frederick gasoline about 8:30 A.M., May 1, that he heard some shots shortly before Frederick came to his place; that within a few minutes after the sale of the gasoline to

Frederick he went south of Rice's Crossing to see about a tractor and on the way he saw the appellant "right beside" the Lawhon Lake and a black Chevrolet parked on the road near the lake and when he returned about 9:30 A.M. the Chevrolet was gone.

It was further shown by the state that Charlie Heise, the deceased, left about 7:00 A.M., May 1, 1959, from his home near Rice's Crossing in a 1949 black Chevrolet bearing license number AN 4918, going fishing at Lawhon's Lake just south of Rice's Crossing. The witness, Lawhon, owner of the lake, testified that he heard several shots at the lake which was about 500 yards from him, early on the morning of May 1. At this time Hiese's car was parked near the lake and left in four or five minutes after the shots were fired. The body of Charlie Heise was discovered about 2:15 P.M., and there were several bullet holes in his chest.

The testimony shows that between 3:00 and 4:00 A.M., May 2, three or four miles east of Ozona, appellant was seen standing in front of a Chevrolet with the hood up looking at the motor which appeared to be very hot; and about 30 minutes later appellant was picked up by a motorist while walking toward Ozona from the place where the Chevrolet had stopped. It was further shown that the Chevrolet had belonged to the deceased, Charlie Heise, before his death. Between 4:00 and 5:00 P.M., May 2, the appellant was arrested in Roswell, New Mexico and at that time he had in his possession a .32 caliber revolver. He was immediately returned to Georgetown, Texas.

On May 3, 1959, appellant signed a written statement which was introduced in evidence by the state. It substantially corroborates the testimony of Kelly Frederick until Frederick ran away from him near Rice's Crossing. The remainder of the statement in part reads:

"After Kelly drove off I walked off the road and into a wooded area, then I sat down on a stump and re-loaded my gun. After re-loading my gun I walked back out on the road. * * * I walked past a black 4 door Chevrolet * * * and looked in it to see if it had a key in it. The car did not have any key in it, and I happened to look out into a pasture, that was on the same side of the road that the car was parked on. In this pasture was a pond, and at this pond, and on the side of the pond next to Rice's Crossing I saw a man standing on the bank of this pond. I crawled through a bob-wire fence, and started walking towards the man who was at the pond. I believe this man was

about one hundred and fifty yards from the road. When I got to the man, he looked to me to be about sixty-five years old. This man was still standing up, and when I got to him I said hi, and he said hi to me, and then he said that he was trying to catch some fish, and he asked me if I was fishing. I told this man that I was just passing through, and he then asked me where I lived and I told him that I lived in Austin. I asked this man if that was his black Chevrolet parked over on the road, and he said that it was. I then told this man that I needed a ride to Austin. This man did not say anything else to me. While I was talking to this man I was standing about six feet from him. When this man did not say anything, I turned from him, and as I was turning my back on him I got my .32 caliber pistol out of my left back pocket of my trousers. I then turned facing him and fired five times at this man. One of the five shots that I fired at this man I know hit him, I believe it was in the chest on his right side. It seemed like this man stood there looking at me for about two minutes after I shot him before he fell to the ground on his face, and just before he fell he made this statement, 'I was going to give you the keys'. After this man fell to the ground I got his car key out of his right front pocket, and I then got his billfold out of his left rear pocket. * * * I left Austin and headed west on highway 290 and about two thirty P.M. on the 1st day of May 1959, this black 4 door Chevrolet blowed a head gasket, and I left it about four or five miles east of Ozona, Texas. * * * When I was arrested in Roswell, New Mexico, I still had in my possession the .32 caliber pistol that I shot the man at Rice's Crossing with. I did not know the man that I shot at Rice's Crossing, and I had never seen him before."

Two fired cartridge hulls were found at the scene where the appellant shot at Kelly Frederick near Rice's Crossing. The proof shows that the two hulls were fired in the .32 pistol taken from appellant's possession when he was arrested in Roswell, New Mexico.

An autospy was performed upon the body of the deceased and it showed that five bullets entered deceased's body, three were recovered from the body and the proof shows that the bullet which entered the left chest caused the death of the deceased, although another one was capable of causing death.

Appellant did not testify but called nine witnesses whose testimony showed that he was 28 years of age, that he had spent

several years in military service, and that after his discharge his actions and conduct were peculiar, he appeared to be depressed, was quiet and withdrawn and he did not act right and was not normal.

The evidence is sufficient to sustain the conviction.

Appellant contends that Tom Atkinson, one of the grand jury commissioners, was not qualified to serve on the commission because he did not have a valid poll tax, therefore the trial court erred in refusing his motion challenging the qualification of said jury commissioner and also the motion challenging the grand jury panel drawn by said commissioners.

The proof on the motion for a new trial shows that Tom Atkinson, who allegedly did not have a valid poll tax, did in fact personally appear at the office of the tax collector and pay his poll tax and his receipt therefor was introduced in evidence. The receipt shows that it was issued in the name of John T. Atkins. The testimony shows that the person appearing and paying his poll tax was John T. Atkinson and who was also known as Tom Atkinson. The official issuing the receipt identified John T. Atkinson at the hearing as the same person to whom he had issued the receipt in the name of John T. Atkins. The evidence sufficiently shows that Tom Atkinson had paid his poll tax at the time he served on the jury commission.

However in Hammond v. State, 163 Tex. Cr. Rep. 471, 293 S.W. 2d 652, we held "that the failure to pay poll tax does not disqualify an otherwise qualified jury commissioner from serving in such capacity."

It is insisted that the trial court erred in refusing appellant's motion to strike the three bullets and the pistol from the record on the grounds that the state's expert firearm witness testified that after proper tests he could not state that the three bullets were fired from the pistol, that there was no issue as to the nature or cause of the deceased's death, and that such evidence probably inflamed the minds of the jury.

The evidence shows that the pistol was properly identified and traced; the qualifications of the pathologist were admitted, and when he had identified one of the bullets that he removed from deceased's body, it was stipulated that the other two were also removed from the body; and he further testified that he delivered them to the firearms expert for examination.

The fact that the firearms expert because of the composition of the bullets and the condition of the pistol could not testify that the bullets were fired from the pistol would not make them inadmissible in evidence when they had been from other sources properly identified. Neither were they inadmissible because there was no issue as to them. The state was entitled to introduce such evidence as it could in making out its case.

Appellant urges error because the state's attorney in his argument to the jury said: "that the defendant testified in his statement" which was a direct reference to the appellant's failure to testify.

The appellant did not testify, but the state introduced his written statement consisting of two and one half single spaced pages in evidence which shows the details of the facts and circumstances surrounding the killing.

The argument shows that the state's attorney was referring to the facts and circumstances related in appellant's written statement that had been introduced in evidence. No error is presented.

The judgment is affirmed.

Opinion approved by the Court.