Harold C. **HINTZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 38426.

Court of Criminal Appeals of Texas.

Oct. 27, 1965.

Rehearing Denied Dec. 15, 1965.

Glenn Hausenfluck, Fort Worth, for appellant.

Doug Crouch, Dist. Atty., Roland H. Hill, Jr., Albert F. Fick, Jr., and Truman Powers, Asst. Dist. Attys., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is murder; the punishment, death.

The state's evidence shows that appellant and the deceased were husband and wife. The two lived in a room which they rented from Mr. and Mrs. W. D. Yates at 905 Southland in the city of Fort Worth. On Sunday afternoon, February 16, 1964, Mr. and Mrs. Yates saw the deceased leave the premises, which was the last time they saw her alive. At such time, appellant was inside the house and the next time he was seen by either of them was on February 27, when Mr. Yates saw him, early in the morning, asleep in his automobile, parked a block away from the house. When Mr. Yates asked him about his wife appellant stated that she had been staying with a friend who was sick. Yates then returned to the house and called the deceased's mother. Two hours later the mother and a daughter came to the Yates's home. Mr. Yates then unlocked the door to appellant's room and the three went inside. Nothing unusual was found in the room, and they all left. Later in the afternoon, Mrs. Yates came home from work and went into appellant's room, where she raised up the bedspread and could see blood. She realized that something was under the bed, and ran out. Mr. Yates then entered the room and found the deceased's body, wrapped in a blanket, lying on the floor under the bed.

When found, the deceased's body was lying on its back, with visible cuts on the face and lips. The head and hair were matted to the floor with blood. An examination of the bed revealed that the bedclothes were bloody, and there were pieces of glass in the bed. Broken pieces of what appeared to be a water bottle were found under the pillow. A number of beer cans were also in the room.

An autopsy was later that day performed upon the deceased by Dr. Feliks Gwozdz, a licensed physician and pathologist. Dr. Gwozdz testified that in the examination he found multiple bruises and lacerations over the facial features and head; that in his examination of the throat and larynx area he found a deeply discolored area beneath the laryngeal region with indentation and very distinct markings going toward the area behind both ears; and that he found, when he opened the area, a fracture of the left part of the hyoid bone, which is the bone that supports the larynx and also the tongue. Dr. Gwozdz testified that, from the autopsy, he determined that the cause of the death of deceased was generalized anoxia due to strangulation and that the deceased must have been dead for several days. The doctor further stated that he

was unable to determine by what means the strangulation occurred and that it was possible that the deceased was strangled by the hands of an individual or by the use of a cord.

It was further shown that appellant was arrested at approximately 3 a. m. on February 28, 1964, after he was discovered, apparently asleep, in his automobile, parked about three blocks from the residence at 905 Southland. Fifteen minutes later he was registered in jail. At 3:10 p. m. on the same day, appellant made and signed a written statement to Officer E. L. Harrison in which he admitted killing the deceased.

The statement was introduced in evidence as state's exhibit #11, and reads, in part, as follows:

"On the morning of February 17, 1964— around 8:30 A.M. after a night of drinking and arguing, I was so enraged that I picked up a heavy glass water bottle (refrigerator type) which we kept on the night stand, and struck my wife on the head with it. The bottle broke. She started screaming and I started choking her with my thumbs pressing into her throat. I did this to quiet her screaming. At this point I must have passed out and woke up approximately two hours later and looked over the side of the bed and my wife was lying on the floor on the east side of the bed clad in a pink robe and a pair of panties. Then I noticed an electric percolator cord wrapped around her neck. When I saw the cord I took it off of her neck. I either put this cord in the desk drawer or plugged it back into the outlet. I noticed that she did not move and I got sick and went to the bathroom. Then I came back and she still had not moved any. I drank a couple of beers then. I kept waiting for her to move and when she didn't move I presumed she was gone. I took the sheet off the bed and threw it over her and slid her under the bed

on the east side of the bed. I drank some more beer and picked up some broken glass that was on the floor and put it in a trash sack by the night stand. There was some broken glass on the bed so I pushed it under the pillow on the west side of the bed. I put the spread over the bed and made the bed up. I drank the last of the beer so I left the apartment to get some more beer. I returned to the apartment again late Monday night, February 17, 1964. I spent the night there, sleeping on top of the bed. I left on Tuesday morning and drank some more beer. I do remember spending several nights sleeping in my car. I returned to the apartment on Friday morning, February 21, 1964— and cleaned up and left the apartment again. This was the last time I was in the apartment. I spent the rest of the time sleeping in my car at night."

Appellant did not testify or offer any evidence in his behalf.

At the conclusion of the state's case, the court, in response to appellant's motion for an instructed verdict of not guilty, withdrew from the jury's consideration the second count of the indictment and submitted to them the first and third counts.

In the first count it was alleged that appellant killed the deceased "by choking and strangling her with his hands," and in the third count it was alleged that he killed her "with a water bottle or with a glass container or a glass jug or in some way or manner and by some means, instruments and weapons the exact nature of which is unknown to the Grand Jury."

The jury, in response to the court's charge, returned a general verdict of guilty.

We overrule the contention predicated upon appellant's bill of exception #3 that the court erred in overruling his motion for an instructed verdict of "not guilty."

The testimony of Dr. Gwozdz is sufficient to support a finding that the deceased died as a result of being strangled by the hands of an individual.

In the present case there is evidence to support a finding of the guilt of appellant under either the first or third count of the indictment. Under the record, the court did not err in submitting both counts to the jury and permitting the jury to return a general verdict of guilty without designating under which count guilt was found.

In Cavazos v. State, Tex.Cr.App., 365 S.W.2d 178, we said:

"Only one offense was charged and that was murder. Where a general verdict is returned, and the evidence is sufficient to support a finding under either of two counts submitted, as there was in the instant case, no error is presented. [Cases cited]"

By bill of exception #2, appellant complains of the court's refusal to grant his motion for a continuance, sought on the ground that he and his attorney had not had an opportunity to examine and study the report of a psychiatrist who had been appointed by the court to examine appellant.

The record reflects that the report was filed in the cause on September 16, 1964, the date the trial commenced. In the report, the psychiatrist, Dr. Harold B. Mindell, stated, in effect, that he found no evidence of insanity.

In the recent case of McIntyre v. State, 172 Tex.Cr.R. 510, 360 S.W.2d 875 (certiorari denied 371 U.S. 867, 83 S.Ct. 130, 9 L.Ed.2d 104), it was held that no error could result from the court's refusal to grant a continuance on the grounds that the report of a psychiatrist had not been received by appellant's counsel prior to trial, when the report subsequently received stated that it was the feeling of the examiner that the accused was sane.

The bill is overruled.

Bill of exception #5 presents appellant's complaint to the admission in evidence of his written confession, state's exhibit #11.

The record reflects that when the confession was first offered by the state, the jury was retired and, in its absence, testimony was presented by the state relative to its execution and admissibility.

Detective Harrison testified that he first talked to appellant in the interrogation room. After appellant indicated he would make a statement, the officer read to him the statutory warning. Appellant then proceeded to dictate the confession to Mrs. Hill, a secretary. After he finished dictating the confession it was typed by the secretary and appellant signed the same.

Appellant objected to the admission of the confession in evidence on the ground that he had not been given the warning prior to the time he actually made the statement to the officer. Such objection was by the court overruled with the statement by the court that the same was admitted in evidence "as complying to both State of Texas laws concerning the taking of voluntary written confessions and the federal laws concerning the taking of written confessions."

The court did not err in overruling appellant's objection to the confession. The fact that Officer Harrison did not warn appellant when he first talked to him did not vitiate the confession. The warning given to appellant prior to the time he made the confession introduced in evidence was sufficient. Campbell v. State, 172 Tex.Cr.R. 431, 358 S.W.2d 376.

After overruling appellant's objection to the confession, the jury returned to the courtroom and similar evidence was again adduced relative to appellant's making the confession. In the jury's presence it was brought out by appellant in his examination of Officer Harrison that when he first talked to appellant he did not ask him if he would like to consult with an attorney, nor

did he tell him "anything about his rights at that time."

Appellant then stated that he objected to the introduction of the confession for the following reasons:

"(1) the statement was actually and for all practical purposes made prior to the time that the defendant was given the statutory warning, (2) the defendant was not advised by the officer taking the statement that he was entitled to counsel and (3) the defendant had been incarcerated, we know, for several hours prior to the time the statement was given. This officer is in no position to know what strain and stress he went through prior to the time this statement was taken. We contend the statement is not a voluntary statement. For those reasons we object to the introduction of State's Exhibit Number 11."

The court proceeded to overrule the objections and admit the confession in evidence. The same was then read to the jury.

After the confession was read, appellant, on recross-examination of Officer Harrison, elicited from him testimony to the effect that when he first talked to appellant he (appellant) was nervous and upset. When asked if appellant was distraught or calm, the officer testified he was upset and that "He didn't act like an ordinary prudent person would."

■ We are unable to agree with appellant that the court erred in admitting the confession in evidence because no independent finding was made by the trial court as to its voluntary nature, as required by the Supreme Court in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, and by this court in Lopez v. State, 384 S.W.2d 345. The statement made by the court in overruling appellant's objection to the confession when it was first offered was a finding that it was voluntarily made. No evidence was, in fact, presented raising an issue as to the voluntary nature of the confession prior to the time it was admitted in evidence.

No request was made by appellant that an issue as to the voluntary nature of the confession be submitted to the jury. There is no proof that appellant made any request to consult with counsel. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, has no application.

Bills of exception #4, 6, and 7 present appellant's complaint to the court's charge.

■ Complaint is made in bill of exception #4 to the court's failure to charge the jury on the law of circumstantial evidence.

Appellant's written confession, stating that he choked the deceased and that she did not thereafter move, was sufficient to take the case out of the realm of circumstantial evidence. Morris v. State, 168 Tex.Cr. R. 29, 322 S.W.2d 632.

■ In bill #6 and 7, appellant complains of the court's charge on intent to kill and the refusal of his requested charge on the same subject.

The court, in his charge, after defining murder with and without malice and submitting to the jury the issue of appellant's guilt of both grades of murder, instructed them as follows:

"You are further instructed that even though you should find from the evidence that the defendant did choke and strangle Elloyse O. Hintz or killed Elloyse O. Hintz with a water bottle or with a glass container or glass jug or in some way or manner and by some means, instruments and weapons the exact nature of which are unknown, yet if you find from the evidence or if you have a reasonable doubt thereof that the defendant did not then intend to kill the said Elloyse O. Hintz, then you will not convict the defendant of murder, either with or without malice, but may consider only whether he is guilty of an aggravated assault."

Appellant objected to the court's charge on the ground that it shifted the burden of proof from the state to appellant, and requested the following instruction which was by the court refused:

" 'You are further instructed that even though you should find from the evidence beyond a reasonable doubt that the defendant did choke and strangle Elloyse O. Hintz or killed Elloyse O. Hintz with a water bottle or with a glass container, or a glass jug, or in some may or manner and by some means, instruments and weapons, the exact nature of which are unknown, yet unless you further believe from the evidence beyond a reasonable doubt that in so doing the defendant then and there had the intent to kill the deceased, then you cannot convict him of murder, either with or without malice; and if you do not so believe from the evidence beyond a reasonable doubt, then you will acquit the defendant of murder and consider only whether he is guilty of aggravated assault.' "

While it would have been better for the court to have given appellant's requested charge, we are unable to agree that the court's charge shifted the burden of proof to appellant. Under either charge, the jury was required to find that appellant intended to kill the deceased before convicting him of murder. If there be any error in the charge given by the court, it was not reasonably calculated to injure appellant and does not present reversible error. Art. 666, Vernon's Ann.C.C.P.

Complaint is made in bill of exception #1 to a portion of the opening argument of assistant district attorney Roland Hill, which appellant insists was a reference to his failure to testify.

The bill certifies that the argument was not objected to by appellant when made but that appellant's objection was first made in his amended motion for new trial. In the absence of an objection by appellant to the argument at the time it was made, the bill presents nothing for review. Young v. State, 163 Tex.Cr.R. 30, 288 S.W.2d 116. We have, however, considered the argument in light of the record in the case and do not agree that it was a reference to appellant's failure to testify. If the question was before us for review, no reversible error would be presented under the decisions of this court in Lewis v. State, 155 Tex.Cr.R. 514, 236 S.W.2d 812, Hart v. State, 163 Tex.Cr.R. 472, 293 S.W.2d 659, and Williams v. State, 169 Tex.Cr.R. 370, 333 S.W.2d 846.

The judgment is affirmed.

Opinion approved by the court.