AMERICAN BOILER MANUFACTURERS ASSOCIATION, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

and

United Association Pipe Fitters Local Union 455 et al., Intervenors.

UNITED ASSOCIATION PIPE FITTERS LOCAL UNION 455 et al., Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Nos. 18106, 18200.

United States Court of Appeals
Eighth Circuit.

Oct. 6, 1966.

See also 366 F.2d 823.

Kenneth C. McGuiness, of Vedder, Price, Kaufman & Kammholz & McGuiness, Washington, D. C., for American Boiler Mfgrs. Ass'n. Stanley R. Strauss, Washington, D. C., and Moller, Talent & Kuelthau, St. Louis, Mo., were with him on the brief.

Donald J. Capuano, of O'Donoghue & O'Donoghue, Washington, D. C., for United Ass'n. Pipefitters Local Union 455. Martin F. O'Donoghue, Washington, D. C., was with him on the briefs.

Louis Sherman and Charles R. Donnenfeld, of Sherman & Dunn, Washington, D. C., filed brief for Building & Construction Trades Dept. AFL-CIO.

Lambert H. Miller, Gen. Counsel, Edward R. Duffy, Associate Gen. Counsel, and Fred B. Haught, Asst. Counsel, Washington, D. C., filed brief for National Assn. of Mfgrs. of United States.

John H. Pratt, Gerard D. Reilly and Lawrence T. Zimmerman, Washington, D. C., filed brief for Air-Conditioning & Refrigeration Institute and Mechanical Contractors Assn., etc. as amici curiae.

Gary Green, Atty., N. L. R. B., for respondent. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost and Norton J. Come, Asst. Gen. Counsel, and Michael R. Brown, Atty., for N. L. R. B., Washington, D. C., were with him on the brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HARPER, District Judge.

VAN OOSTERHOUT, Circuit Judge.

■ Case No. 18,106 is before us upon petition of American Boiler Manufacturers Association (ABMA) pursuant to § 10(f) of the National Labor Relations Act as amended, 29 U.S.C.A. § 151 et seq., to review the decision and order of the National Labor Relations Board filed August 5, 1965, and published at 154 NLRB No. 12. The unfair labor practices charged occurred in St. Paul, Minnesota, within this circuit. Hence, this court has jurisdiction.

In Case No. 18,200, United Association Pipe Fitters Local Union 455, etc., Union 455 seeks a review of the portion of the Board's order adverse to it. The Board by cross-petition seeks enforcement of such portion of its order.[1]

Upon charges filed by ABMA, the General Counsel filed a complaint with the Board alleging that Local 455 [2] and the St. Paul Association of Plumbing, Heating and Mechanical Contractors, Inc., hereinafter called Association, had engaged in unfair labor practices affecting commerce in violation of § 8(b) (4) (ii) (A) and (B) [3] of the Act and § 8(e) of the Act.

Important questions relating to the interpretation of § 8(b) (4) (ii) ·(A) and (B) and § 8(e) are here presented. Amicus Curiae briefs in support of ABMA's position have been filed by National Association of Manufacturers and by Air-Conditioning and Refrigeration Institute, Mechanical Contractors Association of America, Inc., and Associated General Contractors of America. The Board's decision is supported by briefs filed by its General Counsel, by respondent Local 455, and by Amicus Curiae brief of Building and Construction Trades Department, AFL-CIO.

---

1. Local 455's petition for review was originally filed in the District of Columbia Circuit and has been transferred here by order of such court.

2. The complaint was also against United Association Pipe Fitters Local Union 34. The Board found no violation by Local 34. ABMA in brief states it is not pressing here the validity of that part of the decision. Consequently, we give no consideration to the charges against Local 34.

3. By the Landrum-Griffin 1959 amendment, Subdivision (A) of the Act as it had previously existed was amended and designated as Subdivision (B).

Our case No. 18,107 involved similar cases arising in Minneapolis and we have granted petitions of parties in that case for leave to intervene in this case.

The legal issues here presented arise out of efforts of Local 455 to prohibit the installation of packaged boilers in the St. Paul territory. A packaged boiler is a complete steam generating unit. It comprises a heat exchanger, a source of heat, a source of combustion air, operating controls, and safety controls. The packaged boiler is manufactured in factories by assembly line methods. All fuel piping, trim piping and controls are attached at the factory and the completed unit is tested and warranted against defects, which warranty may be voided if any parts are removed. It bears an underwriter's laboratory seal which means it conforms to specified standards. It is shipped for installation at the job site, ready for installation without further fabrication.

Packaged boilers were first introduced and used in the St. Paul area some twenty-five years ago. By the mid-1950s, some 10% of the boilers installed were packaged boilers. Since then their use has increased rapidly and there is substantial evidence that by 1963 60% to 85% of all boiler installations in the St. Paul area were packaged boilers.

Local 455 is a union representing approximately 500 craftsmen in the St. Paul area claiming jurisdiction over the installation of all plumbing and pipe fitting systems in the area, including trim piping and exterior boiler equipment.

Association is composed of 44 plumbing, heating and mechanical contractors in the St. Paul area. It negotiates collective bargaining agreements with Local 455. Most non-member contractors also usually sign any agreement arrived at.

Prior to the use of packaged boilers, trim pipe and other component parts here in controversy were shipped separately and assembled by Local 455 members. The advent of packaged boilers thus resulted in a decrease of work at the job site for Local 455 members. There is evidence that the work here claimed would take two men about two days upon each job.

In 1959 and 1961 negotiations, the Union tried unsuccessfully to obtain a fabrication clause in their contract. In the 1963 contract they obtained a fabrication clause, which reads in pertinent part:

"As a primary working condition, it is agreed that all pipe formations, systems, or controls, or component parts thereof, included within the non-purchase list attached hereto and made a part hereof as Exhibit I, as amended from time to time as provided in this agreement, shall be fabricated on the job site or in the shop of an Employer within the bargaining unit who is bound by this agreement, except as otherwise mutually agreed upon with relation to any particular job."

The contract also established a fabrication committee composed of representatives of the Union and Association, which committee was to apply, interpret and enforce the fabrication clause. The present controversy arises out of efforts to enforce the fabrication clause on three projects, to wit, Minnesota Mining & Manufacturing (3-M), Aircon, and Upper Midwest Piping. The facts are fully outlined in the Trial Examiner's report and the briefs and will not be set out in detail here. The Trial Examiner, upon the basis of a full evidentiary hearing, substantial evidence and credibility findings as outlined in his report, determined:

"4. By entering into and maintaining an agreement containing a fabrication clause which, as interpreted, construed and applied, requires that packaged boilers prefabricated at plants by employees of employer-manufacturers may be used or installed in construction on the project jobsite only if external piping, controls and attachments of the packaged boiler are fabricated at the jobsite by members of Respondent Local 455, Respondent Local 455 and Respondent St. Paul Association of Plumbing, Heating and Mechanical Contractors, Inc., its Mem-

ber-Contractors and Respondent Upper Midwest Piping, Incorporated, engaged in unfair labor practices within the meaning of Section 8(e) of the Act.

5. By threatening, coercing and restraining Minnesota Mining & Manufacturing Company with an object of forcing or requiring said Company to enter into agreement prohibited by Section 8(e), and to cease using, selling, handling or otherwise dealing in the products of, or doing business with, Orr & Sembower, Inc., the Respondent Local 455 engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (ii) (A) and (B) of the Act.

6. By threatening, coercing and restraining D. W. Hickey, Co., Inc., with an object of forcing or requiring said Company to enter into an agreement prohibited by Section 8(e), and to cease using, selling, handling or otherwise dealing in the products of, or doing business with, Orr & Sembower, Inc., and Minnesota Mining and Manufacturing Company, the Respondent Local 455 engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (ii) (A) and (B) of the Act.

7. By threatening, coercing and restraining Pierre Aircon Company with an object of forcing or requiring said Company to enter into an agreement prohibited by Section 8(e), and to cease using, selling, handling or otherwise dealing in the products of, or doing business with, Orr & Sembower, Inc., the Respondent Local 455 engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (ii) (A) and (B) of the Act.

8. By threatening, coercing and restraining Upper Midwest Piping, Incorporated with an object of forcing or requiring said Company to enter into an agreement prohibited by Section 8(e), and to cease using, selling, handling or otherwise dealing in the

products of, or doing business with, Cleaver-Brooks Company and The Heinen Company, its representative, the Respondent Local 455, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (ii) (A) and (B) of the Act."

The Board disagreed with the Examiner's findings and conclusions in almost all respects. It held that none of the parties had violated § 8(e) or § 8(b) (4) (ii) (A) of the Act. It upheld the Examiner's determination that Local 455 had violated § 8(b) (4) (ii) (B) of the Act by reason of threats made to 3-M and Hickey, 3-M's heating contractor, with the object of forcing Hickey to cease doing business with 3-M and 3-M to cease doing business with the makers of the packaged boilers it had purchased. The § 8(b) (4) (ii) (B) violation is the subject matter of the cross-appeal hereinafter considered.

Case No. 18,106. ABMA's Appeal.

ABMA upon its appeal asserts the following errors:

1. By according relevance to the concept of work preservation to validate Local 455's ad hoc agreements, the Board has misconstrued and misapplied Section 8(e) of the Act, and has mistakenly sanctioned Local 455's efforts to resist and thwart technological advancement.

2. The Board committed error by summarily overturning the Examiner's finding that the purpose underlying Local 455's acts was not unit work preservation, and by holding that the construction industry proviso to Section 8(e) protected Local 455's ad hoc agreements.

3. The Board failed in its duty to make a full disposition of the issues in this case, in failing to determine the validity of the fabrication clause as written.

4. The Board erroneously relied upon the concepts of "right of control" and "work preservation" to reach the correct conclusion that Local 455 violated Section 8(b) (4) (ii) (B) of the Act by coercing Hickey and 3-M.

5. The Board erred in concluding that the fining of Aircon did not constitute coercion and restraint within the meaning of Section 8(b) (4) (ii) (B) of the Act.

■ We shall first give consideration to asserted error No. 3, supra, for the reason that we feel such error is well-taken and that such error may have a substantial bearing upon the Board's decision.

The Board in its opinion flatly states: "Moreover, although the fabrication clause might be read as contemplating that trim piping work could be performed in the shop of an employer, the legality of that clause is not here in issue."

The Board found that in the Aircon and 3-M projects the Union referred the dispute under the fabrication clause to the fabrication committee and that the new ad hoc agreements resulted in interpreting the fabrication clause to prohibit installation of packaged boilers at these sites and further found that the ad hoc agreements were designed to serve a lawful primary objective, i. e., to preserve the work of employees covered by the agreement at the job site. The Board's position is thus stated in its brief:

"When the General Counsel issued the complaint herein, he alleged that Section 8(e) had been violated *not* by the mere execution of the contract containing the Fabrication Clause, but rather by the manner in which the parties 'have interpreted, construed and applied' the Clause. At the hearing, the General Counsel's representative was asked by the attorney for the Association 'whether the language of the Fabrication Clause is *per se* or on its face illegal'. The representative replied, 'we have no contention that the language, limited to the Fabrication Clause above, is illegal * * * we have no way of knowing whether the Fabrication Clause, when considered in the light of all the items in the Non-Purchase list, is illegal. * * * The General Counsel, however, is prepared to prove that the parties * * * [have] in fact construed, interpreted

and applied the Fabrication Clause * * *' in a manner violative of Section 8(e).

"In its decision here, the Board noted these circumstances, and the the fact that the *ad hoc* agreements subsequently reached differed in material respects from the terms of the Fabrication Clause itself. In this light, plus the fact that the Fabrication Clause itself expressly contemplated that the parties would be required to negotiate about its application 'to any particular job', we submit that the Board was reasonable in ruling only upon the *ad hoc* agreements and declining to adjudicate the legality of the 1963 Fabrication Clause."

A careful examination of the record satisfies us that the validity of the fabrication clause was fully litigated. The fabrication clause provisions of the contract are set out in full in the complaint. Extensive evidence bearing upon the validity of the clause was received. The Trial Examiner considered the validity of the fabrication clause to be in issue and expressly found that such clause violates § 8(e). The Examiner cites supporting decisions for his conclusion.

In our view, the interpretation and validity of the fabrication clause is a vital issue in this case. The fabrication clause is the foundation upon which the Union's activities complained of rest. The fabrication clause was exhibited by the Union representatives to the property owners who had purchased packaged boilers and was the basis for bringing the owners before the fabrication committee and for forcing the ad hoc agreements relied upon by the Board. Under the ad hoc agreement, 3-M agreed to and did get the manufacturer to remove piping from the boiler. In Aircon, the installation was permitted upon the payment of $100 into a fund maintained jointly by Local 455 and Association for the purpose of developing more enforcement within the bargaining unit.

Since the fabrication clause was the prime instrumentality that brought about the ad hoc agreements, we do not believe

the validity of such agreements can be considered in isolation. If the fabrication clauses as set out in the contract are violative of the Act, their use in coercing the ad hoc agreements would be improper. Moreover, the interpretation of the fabrication clause with respect to whether it preserves work for the Union members in general or for workers at the job site has an important bearing upon the applicability of the construction industry proviso of § 8(e).

■ Courts as well as the National Labor Relations Board have held that a material issue which has been fairly tried by the parties should be decided by the Board regardless of whether it has been specifically pleaded. Associated Home Builders of Greater East Bay v. N. L. R. B., 9 Cir., 352 F.2d 745, 753–755; N. L. R. B. v. Sterling Furniture Co., 9 Cir., 202 F.2d 41; Frito Co. v. N. L. R. B., 9 Cir., 330 F.2d 458; Hughes Tool Co., 147 NLRB 1573, 1576–1577; Como Plastics, Inc., 143 NLRB 151, 155; Monroe Feed Store, 112 NLRB 1336, 1337.

In Associated Home Builders v. N. L. R. B., supra, the court summarized and followed the holding in Frito Co. v. N. L. R. B., supra, on the point here pertinent, stating:

"Upon petition for review and modification of the Board's order, the employer contended that the Board should have found invalid the sections of the contract which were not listed in the complaint by the General Counsel. The court noted that the proof in the case had been admitted without objection. It found that the Board under these circumstances 'could render a decision based upon the issues actually tried without ordering amendment, or it could order amendment to conform to proof or conduct further hearings in the premises.' The court took note of § 101.10 of the Code of Federal Regulations which provides: 'The rules of evidence applicable in the district courts of the United States under the Rules of Civil Procedure adopted by the Supreme Court are, so far as prac-

ticable, controlling.' The court said of this (330 F.2d p. 465): 'The provision noted must be taken to mean that the procedure to be followed in hearings before the Board shall be controlled as far as practicable by the Federal Rules of Civil Procedure.' The court then quoted Rule 15, Federal Rules of Civil Procedure. 'When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.' In other words, where evidence is received without objection the pleadings are to be deemed amended. Such was the view the court took of the situation before it and accordingly it remanded the case to the Board for further proceedings dealing with those matters disclosed by the proof admitted without objection. We feel the facts of this case warrant similar treatment." 352 F.2d 745, 754.

We adopt the foregoing as a proper statement of the applicable law.

Article XXI of the contract, which contains the fabrication clause, provides:

"Savings Clause.

"Section 1. If any provision of this Agreement shall by official Governmental authority, order or court decision be declared invalid, then such invalid provisions shall be of no force or effect. In lieu thereof, the parties shall thereafter negotiate a valid provision."

■ Thus, if the fabrication clause as drafted is invalid, it could afford no legitimate basis for coercing the ad hoc agreements passed upon by. the Board.

We hold that the issue of the validity and interpretation of the fabrication clause was fully explored and litigated before the Examiner and that such issue requires consideration by the Board.

In our view, the Trial Examiner's determination, that the violations charged are established, is based to a considerable extent upon his conclusion that the fabrication clause is illegal. If such clause is in fact illegal, such circumstances

would have a direct and important bearing upon whether what Local 455 here did was legitimate work preservation activity.

The issues raised in this case present close and controversial problems of statutory interpretation. Compare National Woodwork Mfrs. Ass'n v. N. L. R. B., 7 Cir., 354 F.2d 594, and N. L. R. B. v. Local 11, 6 Cir., 242 F.2d 932, with Houston Insulation Contractors Ass'n v. N. L. R. B., 5 Cir., 357 F.2d 182; Todd Shipyards Corp. v. Industrial Union of Marine and Shipbuilding Workers, Local 39, 2 Cir., 344 F.2d 107, 108–109; N. L. R. B. v. Joint Council of·Teamsters No. 38, 9 Cir., 338 F.2d 23, 28; Meat and Highway Drivers, etc., Local Union No. 710, etc. v. N. L. R. B., 118 U.S.App.D.C. 287, 335 F.2d 709, 713–714.

Certiorari has been granted in National Woodwork Mfrs. Ass'n, supra, 384 U.S. 968, 86 S.Ct. 1863, 16 L.Ed.2d 680, and helpful guidelines from the Supreme Court upon the troublesome issues here presented may reasonably be anticipated.

■ When the Board has failed to pass upon a vital issue, the procedure usually adopted is to remand to the Board for determination of such issue and for further proceedings consistent with the views expressed in the appellate opinion. Houston Insulation Contractors Ass'n, supra; Associated Home Builders, supra, and Frito Co., supra.

The Board's decision and order with respect to the charged § 8(b) (4) (ii) (A) and § 8(e) violations is set aside and vacated and the case is remanded to the Board for a determination of the validity of the fabrication clause and for further proceedings not inconsistent with the views here expressed.

■ The charged § 8(b) (4) (ii) (B) violations raise some separate and distinct problems. The only such violation before us on ABMA's appeal is with respect to the Aircon incident as set forth in stated error No. 5, supra. The Examiner found Local 455 threatened, coerced and restrained Aircon with the object of forcing Aircon to cease doing business with the boiler manufacturer in violation of §·8(b) (4) (ii) (B). The Board in upsetting the Examiner's determination distinguishes the Union's conduct here with its conduct in the 3M incident, considered hereinafter on the cross-appeal, and states there is a significant difference between the use of strike and threats thereof and the resort to peaceful means of resolving disputes, and observes: "The agreement upon responsible compensation for what the Union contended was a breach of its contract was similarly a peaceful method of resolving its dispute without a strike or threat thereof."

Thus it would appear that the Board's decision on this issue was largely based upon an assumption that the fabrication clause was legal—an issue which it expressly refused to decide.

The Board's decision on the § 8(b) (4) (ii) (B) Aircon violation is vacated and said issue is remanded to the Board for further consideration consistent with the views herein expressed.

Case No. 18,200. Local 455's Appeal.

Local 455 has filed petition for review of the Board's determination upholding the Trial Examiner's finding that Local 455 violated § 8(b) (4) (ii) (B) by making repeated threats to Hickey, the employer, and 3-M, the building owner, to take economic action by refusing to install the packaged boilers with the object of forcing Hickey to cease doing business with 3-M, and to force 3-M to cease doing business with the boiler manufacturer.

■■ The Board found Hickey to be a secondary employer on the basis of its finding that Hickey had no power to select the boiler to be installed. It was properly found that 3-M was not an employer of the employees involved in the dispute and that it was not a party to the labor contract containing the fabrication clause. We believe that the Examiner's findings, upheld by the Board, are supported by substantial evidence and that such findings support the determination that Local 455 has violated § 8(b) (4) (ii) (B).

The Board's cross-petition for the enforcement of its order with respect to such violation is granted.

### SUMMARY.

The Board's determination that Local 455 violated § 8(b) (4) (ii) (B) with respect to the 3-M incident is affirmed and the Board's cross-petition for enforcement of its order with respect thereto is granted.

Upon ABMA's appeal, the Board's decision and order with respect to all charged § 8(b) (4) (ii) (A) and § 8(e) violations and with respect to the charged Aircon § 8(b) (4) (ii) (B) violation is vacated and set aside and this case is remanded to the Board with directions to determine the legality of the fabrication clause and for further proceedings consistent with the views expressed in this opinion.