Billy Don Franklin **BOULDEN**, Appellant,

v.

William C. **HOLMAN**, Warden, Kilby Prison, Montgomery, Alabama, Appellee.

No. 24174.

United States Court of Appeals
Fifth Circuit.

Nov. 3, 1967.

William B. Moore, Jr., Montgomery, Ala., for appellant.

David W. Clark, Asst. Atty. Gen., Richmond M. Flowers, Atty. Gen. of Alabama, Montgomery, Ala., for appellee.

Before COLEMAN and AINSWORTH, Circuit Judges, and CARSWELL, District Judge.

CARSWELL, District Judge.

Appellant, under sentence of death following conviction for murder and after affirmance on appeal by the Supreme Court of Alabama,[1] sought relief by petition for writ of habeas corpus with the district court.

It was there stipulated and agreed that the issue to be determined was whether the reception into evidence of admissions against interest and purported confessions obtained after appellant's arrest at a time he was not represented by counsel constituted a denial of his constitutional rights as guaranteed by the Fifth, Sixth and Fourteenth Amendments.

After plenary hearing, at which appellant was represented by counsel, the district court entered full and detailed findings.

The evidence adduced at the hearing, which included the trial record and transcript, adequately supports the findings, and we find no error in the district court's denial of the writ and, accordingly, affirm.

■ Before recounting portions of the significant findings of the district court it is noted that Boulden's conviction was obtained and trial completed prior to the effective date of both Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Escobedo v. State of Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 (1964). The rulings in each of these landmark cases are not to be applied retroactively and are therefore inapplicable here. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■ It is correctly urged, however, by counsel for appellant here that while *Escobedo* and *Miranda* set new safeguards against the use of unreliable statements at trial, their retroactivity does not preclude defendants in criminal cases, like Boulden here, whose trials were already completed, "from invoking the same safeguards as part of an involuntariness claim." Id. at 730, 86 S. Ct. at 1779.

The Supreme Court has emphasized in Davis v. State of North Carolina, 384 U. S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) that the review of voluntariness in cases in which the trial was held prior to *Escobedo* and *Miranda* is not limited in any manner by those decisions, saying there at page 740, at page 1764 of 86 S.Ct.:[2]

---

1. Boulden v. State, 179 So.2d 20 (1965).

2. State of Texas v. Graves, 380 F.2d 676 (5th Cir. 1967). See also Wainwright v. Padgett, 363 F.2d 822 (5th Cir. 1966); Lyles v. Beto, 363 F.2d 503 (5th Cir. 1966); Gamble v. Beto, 363 F.2d 831 5th Cir. 1966); Marion v. Harrist, 363 F.2d 139 (5th Cir. 1966).

"As we pointed out in *Johnson*, however, the nonretroactivity of the decision in *Miranda* does not affect the duty of courts to consider claims that a statement was taken in circumstances which violate the standards of voluntariness which had begun to evolve long prior to our decisions in *Miranda* and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). * * * The standard of voluntariness which has evolved in state cases under the Due Process Clause of the Fourteenth Amendment is the same general standard which applied in federal prosecutions—a standard grounded in the policies of the privilege against self-incrimination. Malloy v. Hogan, 378 U.S. 1, 6–8, 84 S.Ct. 1489, 1492–1493, 12 L.Ed.2d 653 (1964)."

With this most recent pronouncement by the Supreme Court in this area of coerced confessions borne in mind we have carefully reviewed the full record here.

Both appellant and appellee agree that the totality of the circumstance surrounding and leading to the confession and admissions must be considered in determining the crucial issue of voluntariness. This requires a rather detailed statement of the factual findings on this record.

On the afternoon of May 1, 1964, appellant, a negro male, 18 years of age, had sexual intercourse with a 15 year old white married female. The testimony of the parties at the trial is in conflict as to whether the act was voluntary or involuntary. As the parties walked down a wooded lane they were confronted by Lloyd C. Hays, a conservation officer for the State of Alabama. A scene ensued in which Hays was shot, struck with a knife and ultimately killed. Appellant was arrested and taken into custody in the vicinity of the alleged crime. He was then taken to the scene of the killing and retained there in a patrol car in the presence of a number of hostile persons. There was no evidence, however, that the protection afforded appellant on this occasion was inadequate.

Appellant was then taken to the Limestone County Jail in Athens, Alabama, where he was interrogated by Lt. E. B. Watts, Criminal Investigator, and Captain John Williams of the State Troopers, from approximately ten o'clock that night until twelve-thirty or one o'clock the next morning. This interrogation was recorded on a wire recorder, hidden on the person of Lt. Watts. Lt. Watts testified that appellant was advised of his right not to make a statement, and that any statement made might be used against him. Appellant testified that he inquired whether he was supposed to have a lawyer, and that he was told that he would not get one until he talked. The transcription of this recorded interrogation reveals that Captain Williams initially made the following statement to appellant: "Nobody has threatened you or anything, we haven't offered you anything to get you to talk to us. * * *"

A confession written in longhand by Lt. Watts was then signed by appellant. The second confession was, in effect, a condensation of the recorded testimony. The first paragraph of the signed confession is as follows:

"I Billy Don Franklin * * * wish to make the following voluntary statement to E. B. Watts. I have not been threatened in no way offered no [sic] reward nor hope of reward to get me to make a statement. I have been told by Mr. Watts that any statement I make can be used against me in a court of law."

Appellant was not informed of his right to counsel.

During the questioning appellant was given food, permitted to smoke, and permitted to use the toilet which adjoined the room where the interrogation took place. The district court found that he was not mistreated in any way, nor was he threatened or otherwise coerced. Appellant testified that he was threatened by Captain Williams. The interrogation ended when appellant admitted that he killed Hays and signed the written confession to that effect. At about 8:30 P.M. on May 1 the father of appellant went to the jail in Decatur in an attempt to see appellant. The jailer denied this

request. Appellant was then taken to Decatur, Alabama, for photographs and a physical examination.

At six o'clock on the morning of May 2, 1964, appellant was brought before Judge James N. Bloodworth, of the Circuit Court for Morgan County. Appellant's mother, father and several other members of his family were present. Judge Bloodworth told those present that the purpose of the hearing was to explain the nature of the charges and to inform the accused of his constitutional rights. The appellant, in the presence of his family, was advised of the following: the pending charges, the right to a preliminary hearing and the nature of such a hearing, the possible penalty if convicted, the right to remain silent, the right to grand jury indictment and trial, the right to counsel and appointment of counsel if indigent. At the conclusion of the hearing appellant consulted with his family, and was then taken to Kilby Prison in Montgomery.

Judge Bloodworth was unaware of the appellant's confessions the night before. The early time for the hearing and appellant's subsequent removal to Kilby Prison in Montgomery were precautionary measures taken to insure appellant's safety.

Appellant remained at Kilby Prison for several days, during which time he was allowed to see his parents. They informed him of their efforts—which were unsuccessful because of their indigency—to hire an attorney. On May 6, 1964, Lt. Watts, Captain Williams, Sheriff McRae and Deputy Fire Marshal Dees took appellant back to the scene of the crime. A circle of police had ringed the area in order to prevent intrusion and to insure appellant's safety. Consistent with his confession in the early morning of May 2, 1964, appellant re-enacted how he killed Hays. Appellant was not again advised of his rights on this occasion, nor was he informed of a concealed wireless microphone on the person of Lt. Watts. The district court found no credible evi-

dence of any coercion, threat, or attempt to procure from appellant an admission or confession against his will. There is no evidence that he was promised a reward or leniency for any statement. A portion of the tape recording and a transcription thereof were admitted into evidence at appellant's trial over the objection of his counsel.

On May 7, 1964, the Circuit Judge appointed counsel to represent the accused.

At the district court hearing Dr. Ronald Hamby, a psychologist, testified that appellant's I.Q. was 83 which was categorized as "dull normal." He further testified that appellant suffered from an anxiety complex, and that he was susceptible to coercion.

The appellant places heavy reliance on Davis v. State of North Carolina, supra, where the circumstances surrounding the confession and prolonged interrogation there were found to be generally "coercive" and the actions of state authorities had the avowed purpose of breaking down the defendant's alibis to the crime of murder. In Davis the defendant was held by police for a period of 16 days, during which time the only persons who saw him were state authorities.

We agree with the district court that the facts in Davis are in sharp contrast to those in the present case. Boulden was interrogated on the day of his arrest only briefly and before this time he had been told that he had a right to remain silent and that any statement which he might make could be used against him. Unlike the facts in Davis, Boulden was treated courteously and allowed to eat, smoke and to use toilet facilities when he desired. Even under the expressly noncontrolling but more explicit teachings of Escobedo and Miranda the sole flaw in the total situation here was the failure to inform Boulden of his right of counsel. It is clear, however, that "a failure to warn accused persons of their rights, or the failure to give them outside assistance" is but one of many factors to be considered upon the

question of voluntariness,[3] and does not itself render defective an otherwise valid confession. Under the applicable standards, therefore, we conclude that Alabama authorities did not transgress Boulden's right to remain silent in procuring this first confession early on May 2, 1964.

■ We agreed with the district court also that those standards were not violated when the second confession was obtained on May 6, 1964. By then Boulden had been fully and most carefully informed by Judge Bloodworth of his constitutional rights, including specifically his right to counsel. This was done approximately 13 hours after arrest and four days prior to the third confession. He did not request counsel until the following day at which time—and before arraignment—counsel was immediately appointed.

It is to be expected that a review of various court decisions on voluntariness, especially those, like this one, which are governed by pre-Escobedo-Miranda standards and the totality of circumstances, should focus on various criteria as determinative.

In Brown v. United States, 356 F.2d 230 (10th Cir. 1966), the criteria found to be relevant were the following: age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the threat of mistreatment or inducement.

■ To this may be added lack of information respecting right of counsel and under each of these a myriad of factual situations. One situation alone may under special factual conditions be suffi-

cient to be controlling. Moreover, if negligent or wilful disregard for the accused's rights are present cumulatively, a finding of coercion is required, as in *Davis*, which is abhorrent to the constitutional guarantee of right of silence. Whatever the factual circumstances, the essential point for determination is whether the accused's will was overborne, thus violating his constitutional right to remain silent.

This we think has always been implicit in our law. *Escobedo* and *Miranda* have made explicit certain specific requirements, thus, hopefully at least, reducing the area where coercion of accused persons is likely to occur. A will overborne, a mind subjugated or enticed, is just as coerced, and thereby constitutionally protected before and after *Escobedo-Miranda*.

It is noted that only a portion of the tape and transcript of the *last* confession was actually received in evidence in appellant's trial. This, as noted before, was obtained after Boulden had been carefully informed of his constitutional rights, including right of counsel. The earlier statements, made after advice with respect to silence but before advice with respect to counsel, were not offered or received in evidence at trial. Appellant urges that the confession actually received in evidence, however, was the end product of the earlier and more constitutionally suspect confession; that the accused was then acutely aware that he had earlier made admissions against his interest and was, therefore, merely repeating his ostensibly uneraseable words of confession. Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), is cited as authority for this contention.[4] To the extent that *Culombe* re-

---

3. Johnson et al. v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Marion v. Harrist, 363 F.2d 139 (5th Cir. 1966).

4. We agree with the district court's observation: "While a Court upon a habeas corpus proceeding such as this one is not concerned with guilt or innocence, Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735,

[5 L.Ed.2d 760,] and while this Court fully recognizes that had either of the confessions been illegally—in a constitutional sense—obtained and then offered and admitted into evidence upon the trial, any subsequent conduct on the part of the defendant—even to the point of testifying and admitting the crime—would not cure the constitutional defect, Fahy v. State of

quires that the totality of circumstances standard of determining voluntariness includes consideration of *all* confessions and incriminating statements attributed to the accused we agree with this contention. And this is precisely what was done by the district court with thoroughness and care, and also what we have sought to do here.

Each of appellant's statements, his actions, the facts respecting his physical and mental condition, and environment from the moment of his arrest to the end of the last interrogation are essential fragments or facets for consideration on the issue of voluntariness, but we find from the record here no plausible suggestion that Boulden's will was overborne on the occasion of the last confession by having made earlier ones. It is noted that all of his statements were consistent, and while they were made at different points in time and place there were no ominous overtones of coercion with respect to any of them which would require as a matter of law a finding of involuntariness.

Finally, we have also carefully considered the evidence with respect to Boulden's age and mental capacity. There is simply no evidence that Boulden's condition in this regard was particularly remarkable or even unusual. We cannot say that the district court was in error in concluding that he was neither mentally nor physically unable to make a free and voluntary confession and admission against interest at any of the critical times.[5]

We cannot say that the record shows a coerced confession as a matter of law nor can we say that the findings and conclusions of the district court are clearly erroneous. See Smith v. Heard, 315 F. 2d 692 (5th Cir. 1963). The judgment appealed from is, therefore,

Affirmed.

Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171, it is interesting to note that Boulden took the witness stand during the trial of this case in the State Circuit Court and testified to almost exactly the same facts to which he had confessed."

5. This is indeed made the thesis of Justice Frankfurter's opinion in *Culombe*, supra, where he reviews the historical background of the fundamental tenet of our law respecting self-incrimination.