**AMERICAN BOILER MANUFACTURERS ASSOCIATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

and

**Local Union 539 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Intervenor.**

**No. 19034.**

United States Court of Appeals Eighth Circuit.

Dec. 6, 1968.

Rehearing En Banc Denied Jan. 21, 1969.

Rehearing Denied Jan. 29, 1969.

Kenneth C. McGuiness, of Vedder, Price, Kaufman, Kammholz & McGuiness, Washington, D. C., for petitioner; Stanley R. Strauss on brief and reply brief with him.

Leonard M. Wagman, Atty., N.L.R.B., Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Gary Green, Atty., N.L.R.B., with him on briefs.

Donald J. Capuano, of O'Donoghue & O'Donoghue, Washington, D. C., for intervenor, United Assn. Pipefitters Local Unions 455 and 539; Martin F. O'Donoghue and Patrick C. O'Donoghue, Washington, D. C., on brief with him.

Gerard D. Reilly, Winthrop A. Johns and Lawrence T. Zimmerman, Washington, D. C., for Associated General Contractors of America and Mechanical Contractors Assn. of America, Inc. and John H. Pratt, Washington, D. C., for Air-Conditioning and Refrigeration Institute, filed brief as amici curiae for Associated General Contractors of America, Mechanical Contractors Assn. of America, Inc., and Air-Conditioning and Refrigeration Institute.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is a companion case to the St. Paul case (404 F.2d 547) and is before this Court for the second time.[1] Two issues are raised on appeal:[2] (1)

---

1. American Boiler Manufacturers Association v. N. L. R. B., 366 F.2d 823 (8th Cir. 1966).

2. There were three incidents in this case out of which the unfair labor practice charges arose i. e., Tonka Toys, Midwest

Is the fabrication clause a per se violation of § 8(e)? (2) Is it a violation of § 8(b) (4) (B) for a union to threaten to strike to enforce a valid work-preservation clause if, at the time of the threat, the employer does not have the "right of control?"

■ We answer the first question in the negative for the reasons stated in the companion St. Paul case.

We answer the second question in the negative for the reasons stated hereafter.

The United Association Pipe Fitters Local Union No. 539 [the Union], a sister Union to Local No. 455 in St. Paul, represents 700 craftsmen in the Minneapolis area. It claims jurisdiction over all pipefitting systems in its area. The Minneapolis Contractors Association is composed of contractors engaged in installing plumbing and heating equipment in the Minneapolis area.

After a number of unsuccessful attempts, the Union succeeded in obtaining a "fabrication" clause in its 1963 collective bargaining agreement with the Contractors Association. The clause was similar to the one negotiated in St. Paul.[3] The agreement also provided for a fabrication committee with duties similar to those of the St. Paul committee.

The § 8(b) (4) (B) charge arises out of efforts of the Union to secure compliance with the fabrication clause on a building construction project for Tonka Toys, Inc.

The facts leading up to the dispute can be briefly summarized:

Lamb Company, a member of the Contractors Association and a party to the 1963 agreement with the Union, entered into a contract which specified that a packaged boiler was to be installed in the Tonka Toy building. Lamb ordered a packaged boiler through the Heinen Company, a representative of one of the boiler manufacturers. When it was delivered to the job site, the Union approached both Lamb and Heinen and demanded that certain piping be removed from the boiler before it was installed. It informed Lamb that the employees would be pulled off the job unless the demand was met.

The Board found that the Union's conduct was coercive but that it was for the purpose of preserving and reacquiring traditional work and was thus not violative of § 8(b) (4) (B). It did so on the premise that Lamb had the "right of control"—a premise which petitioner argues was faulty.

■ We agree with the petitioner that Lamb did not have the "right of control." The Board found that Lamb had a right to substitute an equivalent boiler. This finding is not supported by

---

Oil, Pure Food and Drug. The Board found that there were no § 8(b) (4) (B) violations. On appeal, the Manufacturers Association have abandoned any challenge to the validity of the Board's determination as to the Midwest Oil and Pure Food and Drug incidents. American Boiler Manufacturers Associations v. N. L. R. B., supra, n. 2 at 826.

3. "Section 2. As a primary working condition, it is agreed that the following items and work shall be fabricated or performed on the job site or in the shop of the employer signatory hereto by employees covered by this agreement:
"A. Piping that is not attached at the factory, is not lined or pickled, or is not available as a standard fitting or can be bent or formed with portable equipment.
"B. All piping beyond the flanges or fittings supplied by the manufacturer of the gas or oil burners on boilers; and boiler trim piping. Handling and setting of equipment under the jurisdiction of the United Association Pipe Trades and in accordance with agreements with the International Carpenters Union, the International Sheet Metal Union, and the International Boilermakers Union.
"C. All cutting, threading, welding and fabricating of pipe formations, such as mains, branches, stacks or risers for plumbing and piping systems consisting of materials which convey water, steam, waste, air, vent, gas and oil."

the record.[4] A packaged boiler was specified[5] and Lamb was bound by the specifications.

The question remains: Was the Union's conduct violative of § 8(b) (4) (B) even though Lamb did not have the "right of control?"

When the St. Paul case was originally before this Court,[6] we affirmed the decision of the Board. The Board had held that it was a violation of § 8(b) (4) (B) to threaten a primary employer with a strike to enforce a work-preservation clause if the primary employer did not have the legal right to select the type of boiler to be installed at the time the threat was made. We affirmed without benefit of the teachings of National Woodwork Manufacturers Association v. National Labor Relations Board, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967).

The Board faced the "right of control" issue in *National Woodwork*. It adhered to its precedent.[7] The Court of Appeals for the Second Circuit, relying on Allen Bradley Co. v. Local Union No. 3, etc., 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945), sustained the Board. National Woodwork Manufacturers Ass'n v. N. L. R. B., 354 F.2d 594 (7th Cir. 1965). The Court stated:

"The Board held that the Union violated § 8(b) (4) (i) (ii) (B), by reason of its boycott of prefabricated doors on the Coatesville, North Junior High and St. Aloysius jobs, but as to Frouge, it held otherwise, giving as its reason, that, while in the first three jobs the specifications called for prefabricated doors and hence the Union target was the doors and persons making and distributing them, in Frouge the Union boycotted prefabricated doors which had been purchased by the contractor—but which were *not required* by job specifications. This conclusion seems to indicate that the Board held that the Union's target in Frouge was not the prefabricated doors and their manufacturer but rather contractor Frouge and that the situation involved only a primary dispute with him. We agree."

Id. at 597.

The Union did not seek review of the question before the Supreme Court. The AFL–CIO filed an amicus curiae brief in which it argued that the Board's "right of control" doctrine—"that the employees can never strike against their own employer about a matter which he lacks the legal power to grant their demand"—was an incorrect rule of law inconsistent with the Supreme Court's decision in National Labor Relations Board v. Insurance Agents' International Union, AFL–CIO, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960).

The Supreme Court expressly reserved the question stating that the "right of control" issue was not before it. *National Woodwork*, 386 U.S. at 615, n. 3, 87 S.Ct. 1250.

The Board adhered to the doctrine in a post-*National Woodwork* case. Pipe Fitters Local No. 120, United Association of Journeymen and Apprentices of the United States and Canada, AFL–CIO,

---

4. The only testimony on this point was that, in many cases, provisions are made for substitution of equivalent boilers; but there was no showing that the specific contract between Lamb and Tonka Toys contained such a provision.

5. Mr. Heinen gave the following testimony:
   "Q. Did you have an opportunity, Mr. Heinen, to review the specifications of that particular boiler as published by the architect?
   "A. I did.
   "Q. Can you tell us what was specified?

"A. A packaged boiler, to the best of my knowledge."

6. American Boiler Manufacturers Association v. N.L.R.B., 366 F.2d 815 (8th Cir. 1966).

7. International Longshoremen's Association, AFL-CIO, et al., 137 N.L.R.B. No. 117, 50 L.R.R.M. 1333 (1964); Ohio Valley Carpenters District Council, United Brotherhood of Carpenters and Joiners of America, AFL-CIO (Cardinal Industries, Inc.), 144 N.L.R.B. No. 16, 54 L.R.R.M. 1003 (1963).

168 N.L.R.B. No. 138, 67 L.R.R.M. 1034 (1968).

A number of pre-*National Woodwork* decisions by United States Courts of Appeals had affirmed the Board's position.[8] The principal reasons for doing so were stated by Judge Prettyman in Ohio Valley Carpenters District Council, U. B. of C. v. N. L. R. B., 339 F.2d 142 (6th Cir. 1964).

"The basic criterion is, as the statute (Section 8(b) (4)) specifically provides, the object, or objects, of the union action. So the problem is: What was the object? The Board has held several times that, if a union demands that a contractor do something he is powerless to do except by ceasing to do business with somebody not involved in the dispute, it is manifest that an object of the union is to induce this cessation of business. The courts to which this problem has come have agreed with the holdings.

"We think this is rational and proper reasoning. So in the case before us Hankins's [subcontractor] only means of compliance with the union demand was to cease doing business with Cardinal [manufacturer of prefabricated parts]. Hankins had no power to do by its own act what the union demanded that it do, that is, build the framing with its own men on the jobsite. It is reasonable to hold that the object of the union was not an impossible act but was the alternative possible."

Id. at 145 (Footnotes omitted).

Nevertheless, there has been substantial criticism of the doctrine. Board Member Brown has consistently taken issue with its use. When *National Woodwork* was before the Board, he said:

"But, as I have heretofore pointed out, this is faulty reasoning for it makes the incidental factor of the extent to which an employer could satisfy a union's demands the determinative factor in ascertaining a union's objective in a given case. I believe that all the circumstances including, of course the factor of control, need to be considered in determining a union's objective in these cases, and the total picture in the instant matter, as has already been shown, is that of action taken pursuant to a lawful contract to protect the job opportunities of employees covered by the contract. Such activity is certainly not proscribed by Section 8 (b) (4) (B)."

Metropolitan District Council of Philadelphia and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Etc. [Board Decision in *National Woodwork*], 149 N.L.R.B. No. 65, 57 L.R.R.M. 1341, 1346 (1964) (Dissenting opinion.). See also dissenting opinion in Ohio Valley Carpenters District Council, United Brotherhood of Carpenters and Joiners of America, AFL–CIO, 144 N.L.R.B. No. 16, 54 L.R.R.M. 1003, 1004 (1963).

The law review commentary[9] has also been critical of the doctrine. Typical of such comment is that in 77 Yale Law Journal 1401 (1968):

"The modern primary-secondary analysis requires the complete abandonment of the present 'right of control' rule. The union has bargained for its rights and signed a contract with its employer, who happens to be a subcontractor. These two are without doubt

8. National Woodwork Manufacturers Ass'n v. N.L.R.B., 354 F.2d 594 (7th Cir. 1965); Ohio Valley Carpenters District Council, U. B. of C. v. N.L.R.B., 339 F.2d 142 (6th Cir. 1964); N.L.R.B. v. International Longshoremen's Association, 331 F.2d 712 (3rd Cir. 1964); Local 5, United Ass'n of Journeymen, etc., v. N.L.R.B., 116 U.S. App.D.C. 100, 321 F.2d 366 (1963); N.L.R.B. v. Enterprise Association, etc., 285 F.2d 642 (2d Cir. 1961).

9. Lesnick, Job Security and Secondary Boycotts: The Reach of NLRA 8b4 and 8e, 113 U.Pa.L.Rev. 1000, 1036–1039 (1965).

the primary parties. The general contractor is removed from this direct confrontation, enters into the picture after the agreement has been made, receives his authority over job placement of the complaining unit derivatively from the subcontractor, and is fully aware of the consequences of such work-preservation agreements. The effects upon the general contractor of any strike in this situation are thus ancillary to a primary dispute with the immediate employer vindicating bargaining unit concerns. This result is required if the right to strike is to be assured to subcontractor's employees.

"This reasoning, furthermore, requires no special hardships: the general contractor has adequate notice; machinery exists to mediate any dispute over work between subcontracting units; and the subcontractor is merely estopped from assigning to another party the rights he guaranteed to his own employees."

Id. at 1416–1417.

Since *National Woodwork*, the Third Circuit has taken a new look at the doctrine of "right of control" [10] in the light of the primary-secondary rationale expressed therein, and has adopted the view of the Board minority stating:

"Certainly it [the right of control] was a relevant fact for the Board to consider in deciding whether respondent's strike also had an illegal object. We agree that it would not be decisive proof of such a charge, at least where the collective bargaining agreement contains provisions such as those here involved. Indeed, if the Board's decision can be said to stand for the legal proposition, then the absence of the

right to control is itself of decisive significance here, we cannot agree." N. L. R. B. v. Local Union No. 164, International Brotherhood of Electrical Workers, 388 F.2d 105 (3d Cir. 1968). The issue has not as yet been presented to the other Circuits.

A study of *National Woodwork* convinces us that the decision of the Third Circuit correctly reflects the teachings of that case and that Board precedent to the contrary can no longer be followed.[11]

*National Woodwork* made clear that the test in each case is whether, under all the surrounding circumstances, the conduct of the Union has, as its objective, the preservation of work for unit employees or whether the agreements and boycotts are tactically calculated to satisfy the union's objectives elsewhere. If the latter is the case, "the boycotting employer would be a neutral bystander, and the agreement or boycott would, within the intent of Congress, become secondary. * * * The touchstone is whether the agreement or its maintenance is addressed to the labor relations of the contracting employer vis-a-vis his own employees." *National Woodwork*, 386 U.S. at 644–645, 87 S.Ct. at 1268.

It is clear in this case that the Union's conduct was addressed to the enforcement of its collective bargaining agreement and related solely to the preservation of the traditional tasks of job site plumbers. Indeed, the Board found that the Union did not have "objectives elsewhere." This being the case, we hold that the conduct of the Union, though coercive, was not violative of § 8(b) (4) (B).

In reaching this result, we emphasize, as did the Third Circuit, that

---

10. The Third Circuit had previously affirmed the Board's position in N.L.R.B. v. International Longshoremen's Association, supra.

11. Our view that the "right of control" should not be determinative as to whether a § 8(b) (4) (B) violation has occurred is supported by the dissenting opinion in National Woodwork Manufacturers Association v. National Labor Relations Board, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967). They insisted that all product boycotts are violative of § 8 (b) (4) (B) and that the Board's concept of "control" lacks relevance to the correct determination of whether a § 8(b) (4) (B) violation has occurred. Id. at 659, n. 15, 87 S.Ct. 1250.

the "right of control" is a factor to be considered in deciding whether concerted activity by unit employees has an illegal objective. We hold only that the "right of control" in and of itself is not of decisive significance.

The petitioner requests to vacate and set aside the Board's supplemental decision and the order is denied for the reasons stated above.