**Robert J. WILSON, Regional Director of the Eighteenth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**MILK DRIVERS AND DAIRY EMPLOYEES UNION LOCAL 471, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Respondent.**

No. 4–73 Civ. 385.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 20, 1973.

N. L. R. B., Minneapolis, Minn. by Everett G. Rotenberry, Minneapolis, Minn., and Robert L. Grossman, Edina, Minn., for petitioner.

Hvass, Weisman & King by Si Weisman and Richard A. Williams, Jr., Minneapolis, Minn., for respondent.

NEVILLE, District Judge.

Presented to the court is a petition by the National Labor Relations Board (NLRB) for temporary injunctive relief under Section 10($l$) of the National Labor Relations Act, 29 U.S.C. § 160($l$), against Milk Drivers and Dairy Employees Union Local 471. Petitioner alleges a secondary boycott in violation of Section 8 of the Act, 29 U.S.C. § 158(b)(4)(i), (ii) which reads in pertinent part as follows and makes it an unfair labor practice for a labor organization:

"(i) to engage in, or to induce or encourage any individual employed by any person . . . to engage in a strike, or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or

(ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting com-

merce, where in either case an object thereof is—

(B) forcing or requiring any person . . . to cease doing business with any other person . . . ."

For the most part the material facts are not in dispute. It is admitted in the respondent's answer that this court has jurisdiction and that a charge has been duly filed with the NLRB, which charge is scheduled for an expedited hearing before the NLRB within the next several days. It is further admitted:

Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose in whole or in part of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of work.

Respondent maintains its principal office at Minneapolis, Minnesota, and at all times material herein respondent has been engaged in this judicial district in transacting business and in promoting and protecting the interests of the employee members of respondent.

Ewald Bros. Inc. (Ewald), is engaged at Golden Valley, Minnesota, in the processing and distribution at retail and wholesale of dairy products. In the operation of its business Ewald annually purchases and receives raw milk valued in excess of $50,000 from suppliers located in the State of Wisconsin. Annually Ewald's gross volume of business from sales of its processed dairy products exceeds $500,000.

Ronald Roth, a sole proprietor, d/b/a Ronco Delivery (Ronco), is engaged at St. Paul, Minnesota, in the distribution of dairy products and at all times material herein delivered dairy products from Ewald's dock facilities to certain stores owned and operated by Zayre's Shoppers City (Zayre) pursuant to agreements between Ronco and Zayre.

At all times material herein respondent has been engaged in a labor dispute with Ronco.

In furtherance of its labor dispute with Ronco, respondent engaged in the following acts and conduct:

(1) On July 23, 1973, agents of respondent parked an automobile at Ewald's dock facilities so as to block and physically prevent the loading of Ronco's vehicles with Ewald's products and the transportation of Ronco's vehicles from Ewald's dock facilities, as well as the ingress and egress of other Ronco vehicles to and from Ewald's dock facilities.

(2) On July 23, 1973, agents of respondent ordered and instructed employees of Ewald not to load Ronco's vehicles parked at Ewald's dock or any other Ronco vehicle in the future.

Other allegations of the petition are denied by respondent.

Respondent Union and Ewald have a valid and existing collective bargaining agreement (Resp. Ex. 1) effective as of May 1, 1973 which provides inter alia in Section V, Z.A.:

"All dairy products sold or delivered to persons, firms, corporations, stations, vending machines, or vendors, including outlets operated by Employers as cash and carry milk stores, for resale, shall be handled, processed and delivered by regular employees of the company, subject to the provisions of this Agreement. Emergency pickups excepted where regular deliveries are being maintained by the employees."

It further provides in Section XXIV.B in part:

" . . . It is understood by this section that the parties hereto shall not use any subcontracting or leasing device to a third party to evade this Contract."

The court is aware that the case is not now before it for adjudication on the merits but to determine whether the NLRB "has reasonable cause to believe such charge is true" and that the temporary relief requested is "just and proper". Though traditional concepts of equity relief are not strictly apposite under Section 10(*l*), Minnesota Mining and Mfg. Co. v. Meter, 385 F.2d

265 at p. 272 (D.Minn.1967), the court in determining whether the Board has reasonable cause to believe must make a legal judgment as to whether under the facts as established there is a substantial or at least some reasonable probability of ultimate success on the merits. See Minnesota Mining & Mfg. Co. v. Meter, 385 F.2d 265 (D.Minn.1967), reversing the judgment and decision of this court in Meter v. Minnesota Mining & Mfg. Co., 273 F.Supp. 659 (D.Minn. 1967), for having applied an erroneous standard. Though this was a Section 10(j) case, discretionary with the Board as distinguished from the present 10(*l*) case, mandatory on the Board, the two sections are discussed together in the opinion. (Note later opinion in Minnesota Mining & Mfg. Co. v. National Labor Relations Board, 415 F.2d 174 (8th Cir. 1969), upholding the NLRB order exactly in accordance with the finding of this court in 273 F.Supp. 659). The court must find in addition to reasonable cause to believe that the purposes of the National Labor Relations Act will be frustrated unless temporary injunctive relief be granted. The court does not reach this question, however, until and unless it first determines that the Board has reasonable cause to believe. Then, following the teachings of *Minnesota Mining & Mfg.*, the court does not readily or easily exercise its extraordinary power to grant temporary injunctive relief.

Robert Hosp, the President and principal owner of Ewald testified that early in 1971 Ewald commenced selling dairy products and delivering the same using its own employees to Zayre, on a day to day basis with no contract. In approximately November 1972 Zayre opened new stores at Coon Rapids, Minnesota and South Robert Street, St. Paul. Ewald then began to sell its products to Zayre (or as it is claimed to Ronco) at its loading dock, delivering the same to Ronco for hauling, though it continued to bill Zayre directly for the products purchased plus 8% hauling charge, which later charge when received was remitted to Ronco. Mr. Mel Roth is Zayre's general manager and Ron Roth, now age 27 is the proprietor of Ronco and is his son. About this time Ron Roth bought one share of stock of Ewald for $1,500, became a member of Ewald's Board of Directors and according to other testimony was put on Ewald's payroll at a salary of $500 per month. Hosp testified there are numerous other dairies or distributors who buy at the dock and load in their own trucks. In late 1972 and all during the first six months of 1973 numerous conferences were had between Hosp and the respondent Union representatives and between Hosp and Ron Roth. In January 1973 respondent Union advised Ewald that it considered it to be in breach of the Collective Bargaining Agreement but in the hopes that "something would work out" took no definitive action until July 23, 1973 when it caused deliveries to Ronco be stopped. Ewald has loaded no Ronco trucks since July 23 and has made and delivered a substantially reduced amount of sales to Zayre. Its volume of sales to Zayre had been in excess of $125,000 per month and comprised 40% of Ewald's wholesale sales and 20% of its total sales. If this volume is not recovered, Hosp anticipates Ewald will not be able to maintain its present number of employees. Union members testified that their motive in stopping the Ronco deliveries was preservation of the integrity of the Collective Bargaining Agreement and the preservation of jobs for Union members and had nothing to do with Ron Roth's attempt some six months earlier to secure a contract with the Union. Though in a sense, Local 471 had disputed with Roth, it is obvious it had long since become a dead letter as to any proposed labor contract with him.

Ron Roth needed a truck to engage in the business of hauling the Ewald products. He and Ewald entered into a lease agreement for a discarded and fully depreciated truck of Ewalds, a 1956 Ford, for $100 a month, repainted by Ewald. Ronco used the truck but never paid but one $100 payment since according to

Roth's testimony, $600 of immediate repairs became necessary, more than the worth of the truck, and the one $100 payment was considered by Ewald to be payment in full.

Ron Roth testified that he had negotiations with respondent union in later 1972 and early 1973 at his own solicitation in an effort to procure a collective bargaining agreement with, or become a party to the one of the existing Ewald collective bargaining agreements with certain additional conditions (Petitioner's Exs. 5 and 6). These negotiations proved abortive and Ronco has had no collective bargaining agreement with any union. Since July 23 Zayre apparently has been procuring non-union processed dairy products hauled by Ronco from sources other than Ewald. As of July 20, 1973, Ronco and Zayre, signed by Ron Roth and his father Mel Roth, entered into a distributorship agreement (Petitioner's Ex. 7) by the terms of which Ronco is to be the exclusive distributor to Zayre of milk and dairy products. The agreement was prepared by Ronco's attorney and is an effort to formalize the arrangement under which Ronco claims to have been operating for some time past.

It is obvious that Robert Hosp, for and on behalf of Ewald is anxious to retain if at all possible the Zayre account, even to the extent of putting the Zayre manager's son on Ewald's payroll, making him a member of the Board of Directors, furnishing him a truck and favoring him in every way possible. This is quite understandable from Ewald's point of view, but in this court's opinion is substantial evidence of a claimed violation of the collective bargaining agreement with Local 471 and may well be considered to constitute an effort by device or subterfuge to deprive 471 employees of the work of delivery which it was agreed Union members should do. There is thus a primary dispute between Ewald and Local 471.

■■ It is clear from the cases of National Woodwork Mfrs. Ass'n v. Na-

tional Labor Relations Board, 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), and American Boiler Mfrs. Ass'n v. National Labor Relations Board, 404 F.2d 547, at p. 554 (8th Cir. 1969), that work preservation agreements are valid and not within the ban of the National Labor Relations Act. In fact on oral argument counsel for NLRB admits the validity of the above quoted provisions of the collective bargaining contract. In *American Boiler* the court stated at p. 554:

> "To summarize, we hold that a collective bargaining agreement which seeks to preserve work currently being performed by unit employees and to reacquire that portion lost is not violative of § 8(e). It follows from the teachings of *National Woodwork* that employees can enforce such an agreement through concerted activity which is directed at their employer."

It is also true that many if not most labor disputes injure some third parties and have adverse effects on neutrals. This of itself however does not establish a violation of the secondary boycott provisions of Section 8(b)(4). *National Woodwork Mfrs. Ass'n supra.*

■ In the cases, the injured party is referred to as a neutral. In the traditional secondary boycott A is one doing business with B, a company which is involved in labor difficulties with a union and in an effort to coerce B to accede to the demands of the union representing or attempting to represent B's employees, A employees threaten or are encouraged to strike A or perhaps more commonly to refuse to do business with, sell to or make deliveries to B of A's products. In such a situation there is no labor contract between the union and A and A is a true neutral; here quite the contrary. The so-called "neutral" party, Ewald, has a contract with the Union and in its desire to keep the Zayre account has hired and is paying Zayre's manager's son and is attempting to avoid its contract with 471 by simulating a distributorship though billing

Zayre for the products and transportation and thus giving the job and work to Ronco to the exclusion of Local 471 members.

In *American Boiler* the court at p. 552 did not reach the questions as to new jobs or job tasks, stating:

"Neither of the statements cited by the Association support the view that traditional work is limited to work which is currently, continuously and exclusively performed by the unit members. Both statements refer to the possibility of acquiring new jobs or job tasks—jobs that had never been performed.

We express no opinion as to whether a fabrication clause can be enforced if the objective is to acquire work which unit employees had never performed or work which they may have performed in the past but have completely lost before the clause was negotiated. We hold only that the term 'traditional work' includes work which unit employees have performed and are still performing at the time they negotiated a work-preservation clause."

It seems clear to the court that in the case at bar, deliveries to Zayre are not jobs never performed, nor new jobs, even though the opening of the South Robert Street store might and undoubtedly would increase the volume. Until late 1972 deliveries to Zayre were done by employees of Local 471; further the expanded volume is not a new type or category of "job task" and the court need not reach that "new job" question here.

Counsel for the NLRB lays great stress on Local Union 438, United Ass'n of Journeymen & Apprentices of the Plumbing and Pipe Fitting Indus. of the U. S. and Canada v. Local Union No. 48, et al., and George Koch Sons, Inc., referred to in the brief as the *Koch* decision, 201 NLRB 7, arguing that even if Ewald is in violation of its contract with Local 471, there is still a violation of Section 8(b)(4)(i, ii)(B). The court does not read the opinion that way as applied to the case sub judice. *Koch* distinguishes *National Woodwork* on the basis that there the employer had an option as to type of doors to buy whereas in *Koch*, the employer had no power to give the Union the work i. e., no power to control. In the case at bar by Hosp's own testimony Ewald had no contract with Zayre but operated on a daily basis and in any event was not "controlled" to hire and put on the Board of directors the Zayre manager's son and furnish him a truck in order to secure some business. Ewald's action in this regard certainly was optional and as a non neutral it did all it could to ignore its contract with Local 471. In addition *Koch* itself recognizes at page 16 that several circuits, including the Eighth, since *National Woodwork* have disagreed with the Board's approach and consistent holding. Footnote 29 states:

"This includes the Third, the Eighth, and the District of Columbia Circuits which prior to the Supreme Court's *National Woodwork* decision agreed with the Board's approach. For their positions now see N. L. R. B. v. Local Union No. 164, International Brotherhood of Electrical Workers [Bd. of Educ. of Ridgewood, N. J.], 385 F.2d 105 (C.A.3, 1968); Local 636, Plumbers [Mechanical Contractors Assn. of Detroit] v. N. L. R. B., 430 F.2d 906 (C.A.D.C., 1970), and Local 742, Carpenters [J. L. Simmons Co.] v. N. L. R. B., 444 F.2d 895 (C.A.D.C., 1971), cert. denied 404 U.S. 986 (1971); American Boiler Manufacturing Association v. N. L. R. B., 404 F.2d 556 (C.A.8, 1968). But cf. Sachs v. Local Union No. 48, Plumbers, 454 F.2d 879 (C.A.4, 1972), in which the Fourth Circuit granted a 10(1) injunction to the Regional Director in the instant case.

All in all the court does not believe the NLRB has "reasonable cause to believe" that a violation has occurred. See Rotenberg v. Plumbers U. Local 15, United Ass'n of J & A., 304 F.Supp. 880 (D.Minn.1969). The inquiry may therefore stop here.

At the conclusion of the two day hearing and based on testimony produced at the close of the second day that Local 471 had directed its members on August 11, 1973 not to load at the Ewald dock trucks from Gustafson Dairy and Morning-Fresh Dairy (Petitioner's Exs. 8 and 9), counsel for the NLRB moved to amend the petition to include such as an additional alleged violation of Section 8(b)(4)(i, ii)(B). The court granted the motion to amend but is unable to rule one way or the other on this new claimed violation without any evidence before it. So far as the evidence shows, which was not pointed toward these two dairies, there is no such device attempted as with Ron Roth but without knowledge of the circumstances the court does not believe it can rule despite the allowance of the Amendment.

A separate order has been entered.