**James Lee MARION, Appellant,**

v.

**Grady HARRIST, Appellee.**

**No. 22649.**

United States Court of Appeals
Fifth Circuit.

July 18, 1966.

Rehearing Denied Aug. 29, 1966.

Garland Casebier, Carl Steckelberg, Midland, Tex., for appellant.

Allo B. Crow, Jr., Asst. Atty. Gen., Austin, Tex., Alton R. Griffin, Dist. Atty., Lubbock, Tex., for appellee.

Before BELL and THORNBERRY, Circuit Judges, and FISHER, District Judge.

GRIFFIN B. BELL, Circuit Judge:

Appellant is under a death sentence for murder. He was charged with bludgeoning Mrs. Fred Turner to death at her home in Midland County, Texas on October 29, 1963. Venue of the case was transferred by the state district court on its own motion from Midland County, Texas to Lubbock County, Texas. The jury returned a verdict of guilty on a plea of not guilty, and also found that appellant was sane at the time the act was committed and at the time of trial. The Texas Court of Criminal Appeals affirmed the judgment of conviction. Marion v. State of Texas, 1964, 387 S.W.2d 56. That court also denied two motions for rehearing. This appeal followed the denial of his petition for a writ of habeas corpus after a plenary hearing in the Federal District Court.

Mrs. Turner was alone in her home in Midland, Texas on the night in question. She was sleeping in an upstairs bedroom with the door locked. Her neighbors heard screams shortly after 4:00 a. m. The police were called and reconnoitered the area without success. They did not go into her home which occupied an entire block. Mrs. Turner's maid arrived shortly before 8:00 a. m. and noticed

muddy tracks both outside and inside the house and that the drapes and venetian blinds were in a different position from the night before. This alarmed her to the extent that she went to a neighbor's house to call Mrs. Turner's son-in-law and daughter. The sheriff was also called at about the same time. The son-in-law, daughter and maid entered the home a few minutes later. The son-in-law and maid found Mrs. Turner's body upstairs. They went outside the house almost immediately to meet the sheriff and his deputy. Mrs. Turner's daughter was left alone in the library. A man, identified by her at the trial as appellant, walked in on her in the library and struck her on the head with a pistol. The sheriff, his deputy and the son-in-law walked in at this time. The man, also identified by them as appellant, held the gun on them and escaped. The maid and yard man were outside and identified appellant as the man escaping.

Appellant was found in the attic of a nearby building in Midland shortly before noon. He was armed with a pistol. He had a purse which belonged to Mrs. Turner in his pocket when he was seen in the house. An identification holder containing a picture of Mrs. Turner was found in a room under the attic where he was apprehended. Buttons which were missing from his shirt, and which matched those left on his shirt, were found in the house near the body of Mrs. Turner. A hole had been knocked in the door to Mrs. Turner's bedroom so that it might be unlocked. A crowbar was found near the door. Despite this and other evidence connecting appellant to the crime, two written incriminating statements were taken from him. The first was taken shortly after he was arrested, and prior to his arraignment at 3:50 p. m. on the same day.

With respect to the first statement, there is ample evidence that appellant was advised by the police that it was not necessary for him to make a statement, that he might remain silent, and that any statement made might be used against him in court, and that he was also advised that he could obtain his own counsel. He had prior burglary convictions and had used a Midland lawyer on the occasion of the disposition of four separate indictments for burglary. It was suggested to him that he call this same lawyer. The evidence was that he stated that he did not want a lawyer. There was a telephone in the room where he was being interrogated and the evidence was that he was offered the use of the telephone to call the lawyer.

Two days later appellant refused to give a second statement when requested to do so by the district attorney. Fifteen days later appellant did give a second statement which cleared up some inconsistencies between the first and some of the evidentiary facts. The evidence was that he was also offered a lawyer on this occasion but he stated that he did not wish counsel. One of the police officers had asked him to give the second statement and he stated that he would think about it. He, in fact, gave the statement two days later.

The court appointed trial counsel for him two or three days thereafter on the basis that he was an indigent person. There is no evidence that he was ever advised prior thereto that he was entitled to the appointment of counsel without charge. No contention whatever is made that he was coerced into giving the statements or that his will was in anywise overborne.

Subsequent to his trial in March 1964, the case of Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, was decided, and appellant predicates his claim to relief on the proposition that he was entitled, under that authority, to be advised of the right to the assistance of court appointed counsel during the times when he made the incriminating statements. It cannot be disputed that the investigation, at the time these statements were made, had reached the accusatory stage within the meaning of Escobedo. However, we hold the Escobedo doctrine inapplicable and affirm.

*Escobedo* applied the right of counsel to the interrogation stage of criminal investigations. It followed from this application that incriminating statements were inadmissible where, as was the case there,

"* * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *" 378 U.S., at 490–491, 84 S.Ct. at 1765.

The Supreme Court spelled out the bare bones holding of *Escobedo* in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, by laying down conditions precedent to the use of in-custody confessions obtained after police interrogation. To guarantee full effectuation of the privilege against self-incrimination the court said:

"* * * the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right

to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." 86 S.Ct. 1612.

The court was even more explicit in its further discussion of the conditions:

"At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. 86 S.Ct. 1624.

*       *       *       *       *       *

"The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. * * *

"* * * we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. * * 86 S.Ct. 1626.

*       *       *       *       *       *

"In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, the admonition of the right to consult with

counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one. The warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent—the person most often subjected to interrogation—the knowledge that he too has a right to have counsel present. As with the warning of the right to remain silent and of the general right to counsel, only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it.

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent." 86 S.Ct. 1627.

In view of Miranda, even if not Escobedo, the statements here would be inadmissible due to the failure of the police to advise appellant, an indigent person, prior to taking the statements, that he was entitled to have a court appointed lawyer, and that he could confer with the lawyer and have him present during in-

terrogation. However, the Supreme Court in Johnson v. New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, held that Escobedo affects only those cases in which trial began after June 22, 1964, and that Miranda applies only to those cases where the trial began after June 13, 1966. The trial here commenced on March 16, 1964. Thus appellant is relegated to such rights as he had in the premises prior to these decisions. This did not include the right to the offer of court appointed counsel at the times he was being interrogated. As stated, we are not faced with any contention that the statements were made involuntarily. Cf. Davis v. North Carolina, 1966, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895. Appellant's sole ground for the writ and for reversal on this appeal is that the confessions were elicited at times when he was without counsel and had not been offered free counsel. His position at the habeas hearing was that any consideration of the voluntariness or involuntariness of the confessions was irrelevant to the proceeding which was based solely on the deprivation of his right to counsel during interrogation. The Supreme Court, prior to Escobedo and Miranda, had expressly declined to condemn in-custody interrogation based on the failure of the police to permit accused persons to consult with counsel. See Crooker v. State of California, 1958, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448; Cicenia v. La Gay, 1958, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523, both overruled in Miranda. The court alluded to these holdings in Johnson v. New Jersey, supra, and pointed out that a failure to warn accused persons of their rights, or the failure to grant them access to outside assistance had theretofore been treated simply as factors tending to prove the involuntariness of the resulting confessions. Cf. Haynes v. State of Washington, 1963, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513; Spano v. People of State of New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265. These failures on the

part of the police did not condemn the entire interrogation process.

Here the police failed to tell appellant that he was entitled to court appointed counsel during the interrogation process and to have counsel present. He was afforded an opportunity to obtain counsel on his own. He was warned of his right to remain silent and that such statements as he might make could be used against him in court. He does not contend that his will was overborne by the police with regard to either confession. His case was tried in the District Court on the basis of his right to appointed counsel *per se*, and not on a theory of coercion by reason of his will having been overborne by the police. We affirm on the basis that he had no right as such under the state of the law as it then existed, to counsel, retained or court appointed, during the interrogation process.

Affirmed.