**Harold C. HINTZ, Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Appellee.**

**No. 24396.**

United States Court of Appeals
Fifth Circuit.

June 29, 1967.

Rehearing Denied Aug. 3, 1967.

Arthur Mitchell, Austin, Tex., Glenn Hausenfluck, Fort Worth, Tex., for appellant.

Lonny F. Zwiener, Asst. Atty. Gen., Austin, Tex., Frank Coffey, Dist. Atty., Roland H. Hill, Jr., Asst. Dist. Atty., Fort Worth, Tex., Crawford C. Martin, Atty. Gen., of Texas, George M. Cowden, First Asst. Atty. Gen., A. J. Carubbi, Jr., Staff Legal Asst., R. L. Lattimore, Howard M. Fender, Larry J. Craddock, Asst. Attys. Gen., Austin, Tex., for appellee.

Before BELL, GODBOLD, and DYER, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Appellant, a federal habeas corpus petitioner, stands convicted of murder with malice in the Criminal District Court of Tarrant County, Texas, and is awaiting the imposition of the death sentence. He was convicted on November 20, 1964 for the murder of his wife on February 17, 1964. His motion for new trial in the state court was denied and the conviction was affirmed on appeal. Hintz v. State, Tex.Crim.App., 1964, 396 S.W. 2d 411.

The District Court held a full and complete hearing on the petition for the writ. Appellant was represented by his court assigned counsel who has represented him at all times since his appointment by the state trial court in April 1964. The petition was denied by the District Court but the stay of execution theretofore entered was continued pending this appeal. The petition for the writ was based on three grounds: First, that a confession introduced against appellant was illegally obtained; second, the state trial court denied appellant due process of law in refusing a motion for continuance so as to afford appellant's counsel a fair opportunity to develop a defense based on appellant's mental condition; and lastly, that he was denied due process of law by the failure of the trial court to make a determination of his competence to undergo trial. We agree with the District Court that the confession was not illegally obtained and thus it was admissible. We treat the second and third grounds together as a denial by the state trial court to appellant of the effective assistance of counsel as that right is due under the Sixth Amendment and reverse for a new trial in the state court.

I.

At the outset it is well to note that there was a good deal more evidence before the District Court on the question of appellant's mental condition than was the case in the state trial court. In fact, this question was not developed at all in the trial. This was either a result of trial strategy on the part of defense counsel, as the state contends, or because of inadequate preparation time as appellant contends. The facts will be stated as they existed in the District Court. The difference, in the main, comes from county court and Veterans Administration records on appellant, a note which he wrote prior to his arrest in which he admitted the crime, and the report of a court appointed psychiatrist submitted to the trial court on the day the trial began.

Appellant grew up in Iowa as the only child of parents who are still living there. His early life was apparently normal and he has at least average intelligence. He is a high school graduate and studied courses in business thereafter. He entered the United States Army in 1942 at the age of twenty-two and thereafter became a paratrooper. He served as a sergeant in the 505th Parachute Infantry Regiment during the invasion of Sicily and injured his back in a jump. He was in and out of government hospitals for some years thereafter including a confinement of thirteen months for a back operation. He became an alcoholic and blamed this on the

fact that he was in constant pain. As his life went from bad to worse, he was arrested on several occasions for passing bad checks, and for drunken driving. In 1958 he was convicted of burglary and served three years for this. He apparently burglarized a home to obtain food.

He married in 1952. His wife was unable to control his drinking as were his parents. He was diagnosed in a Veterans Administration hospital in 1955 as having an antisocial personality with alcohol addiction. In September 1962 he was committed, at the instance of his wife, by the County Court of Tarrant County, Texas to a Veterans Administration hospital as a mentally ill person. This was done on the certification of two medical doctors that appellant was mentally ill and was likely to cause injury to himself or others if not restrained. Their diagnosis was "psychotic reaction". The Veterans Administration hospital admission diagnosis on September 28, 1962 was "Schizophrenic reaction, chronic, undifferentiated type". He was discharged some three months later.

Shortly thereafter appellant, as he was wont to do, slept in his automobile for several days during a binge. He suffered frost bite and as a result lost his left leg just below the knee and the greater portion of his right foot.

On February 27, 1964 at about 6:30 p. m., his wife was found dead in their apartment. She had been dead about ten days. Neighbors informed the police that appellant had not been sleeping in the apartment for the past week or so but had been sleeping in his parked car around the neighborhood. They told of loud arguments between the couple on various occasions. The report of the case in Hintz v. State, supra, describes how the murder was discovered as follows:

"[Appellant and his wife] * * * lived in a room which they rented from Mr. and Mrs. W. D. Yates at 905 Southland in the city of Fort Worth. On Sunday afternoon, February 16, 1964, Mr. and Mrs. Yates saw the deceased leave the premises, which was the last time they saw her alive. At such time, appellant was inside the house and the next time he was seen by either of them was on February 27, when Mr. Yates saw him, early in the morning, asleep in his automobile, parked a block away from the house. When Mr. Yates asked him about his wife appellant stated that she had been staying with a friend who was sick. Yates then returned to the house and called the deceased's mother. Two hours later the mother and a daughter came to the Yates's home. Mr. Yates then unlocked the door to appellant's room and the three went inside. Nothing unusual was found in the room, and they all left. Later in the afternoon, Mrs. Yates came home from work and went into appellant's room, where she raised up the bedspread and could see blood. She realized that something was under the bed, and ran out. Mr. Yates then entered the room and found the deceased's body, wrapped in a blanket, lying on the floor under the bed."

The police department issued a pickup order for appellant for murder. At about 3:00 a. m. the next morning a police officer noticed an automobile parked in a no parking area with the motor running and with no visible occupant. The exhaust was noticeable because of freezing weather. As he set out to investigate the matter he noticed that the model of the automobile and the license number fit the description of appellant's automobile as it had been described in the pickup order. He was immediately joined by another officer and they found appellant sleeping on the front seat of the car and were able to arouse him. He was in something of a drunken stupor. The automobile was filled with clothes, cooking utensils, empty and full cans of beer. The officers did not have any details as to the murder, knowing only that appellant was to be picked up

for murder. One officer said to him, "Who did you kill." He replied, "I guess my wife." The officer inquired as to what he killed her with and he said, "With a water bottle or a water pitcher." Appellant was then placed in jail.

Some twelve hours later he was removed from his cell to an interrogation room where he was interviewed by the two detectives who had investigated the murder at the home and who had issued the pickup order. He immediately advised them that he had killed his wife. The total conversation lasted for about ten minutes. He signed a written statement of confession after a stenographer was called in to prepare it. Prior to giving the statement to the stenographer, appellant was advised that he did not have to make a statement, but that if he did it might be used in evidence against him.

There is no evidence of any coercion whatsoever. The detectives who took the statement testified that they did not know of his earlier oral statement to the officers at the time of the arrest. The statement was admitted on the trial after a preliminary inquiry by the court, outside the presence of the jury, as to its voluntariness, Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

▮ We begin with the proposition that Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, does not apply in this case with respect to the right to counsel and to the warning, the trial having taken place before June 13, 1966. Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. See Marion v. Harrist, 5 Cir., 1966, 363 F.2d 139, another Texas death case involving the same issue. However, the teachings of Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 are applicable inasmuch as the trial took place after June 22, 1964, the date of the Escobedo decision. Johnson v. State of New Jersey, supra; Marion v. Harrist, supra. Our conclusion is that, although appellant falls into the Escobedo category as being one particularly suspected, he was "* * * effectively warned of his absolute Constitutional right to remain silent" prior to giving the written confession (the only confession or admission in issue). Escobedo, 378 U.S. at p. 491, 84 S.Ct. 1758. He was not offered counsel as Miranda would now require, but unlike Escobedo, appellant did not request nor was he denied counsel. His confession is thus not foreclosed by the Escobedo doctrine. Also, we agree with the District Court that there was probable cause for the police to believe that appellant had committed the crime and that this was sufficient cause for an arrest. We, therefore, are not faced with a case where the confession is the product or fruit of an illegal arrest and Collins v. Beto, 5 Cir., 1965, 348 F.2d 823, on which appellant relies, is distinguishable.

Appellant argues that his mental condition was such that he was not competent to confess the crime but he did not make out such a case. As stated, there is no evidence of any coercion or pressure from the interrogators, or that appellant was not competent at the time he gave the written confession. Even before the body was found or he was arrested, appellant wrote the following note which was later found in the car by the son of the victim by a previous marriage:

"I did it to my wife look under the bed at 905 Sutherland. it happened at 8 A.M. Monday February 17.

"I couldn't keep her and take care of her and I loved her too much to let anyone else have her. I'm no good to myself or anyone else.

"Sorry Folks, I loved you too.

Harold C. Hintz"

This statement is somewhat contradictory of the confession. Some of its contents are that the crime occurred after a night of drinking and arguing. Appellant struck his wife with the water bottle, choked her and then fell asleep. When he awoke he found the cord to the electric coffee pot wrapped around her neck. He

removed the cord, found that she was dead, became sick and then consumed all of the alcohol in the house. Sometime in the process he put a sheet over the body. He cleaned the room to some extent and finally put the body under the bed. He left then to get more beer. He slept in the room that night (Monday), continued to drink over the intervening days and nights but slept in his car. He returned to the room on Friday, cleaned up, and left for good.[1]

These statements and the other facts bearing on background, previous mental problems and the like are important on the questions of appellant's mental accountability for the crime, his capacity to undergo trial and on his competency to confess. Nevertheless, these questions, as noted, were not developed on the trial and will be considered in connection with the next assignment of error which is based on the failure of the trial court to grant a continuance. Our holding with respect to the confession is without prejudice to appellant's right, on a new trial, to allege and offer proof in an effort to substantiate, if he can, that his confession was inadmissible because of his mental condition. Cf. Blackburn v. State of Alabama, 1960, 361 U.S. 199, 80 S.Ct. 274, 281, 4 L.Ed.2d 242.

## II.

■■ We come now to the second issue. The right to counsel afforded under the Sixth Amendment means the effective assistance of counsel and effective assistance requires time for preparation. Powell v. State of Alabama, 1932, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158; Roberts v. United States, 5 Cir., 1963, 325 F.2d 290. Time for preparation, where mental competency is in question and there is a fair factual basis as here for the question, would at least include a reasonable time within which to have a defendant examined, and for preparation of such defense as might be based on the facts developed by the examination. We only recently recognized that effective assistance of counsel in such a case may necessitate a psychiatric examination of a defendant. Bush v. McCollum, N.D.Tex., 1964, 231 F.Supp. 560, aff'd sub nom. McCollum v. Bush, 1965, 344 F.2d 672, 673. Cf. United States ex rel. Smith v. Baldi, 1953, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549; and Greer v. Beto, 5 Cir., 1967, 379 F.2d 923.

In this case counsel was appointed in April 1964. At some point he discovered the county court record, supra, whereunder appellant was committed. On June 5, 1964 he filed a motion in which he asked the court to have appellant examined by a psychiatrist and pointed out that appellant had twice been admitted to the Veterans hospital for mental disorders. The request was broad enough to include an examination as to mental accountability for the crime and also capacity to undergo trial. The court granted the motion on June 8, 1964. The trial was set for November 16, 1964. On October 26, 1964 the court appointed a psychiatrist to make an examination of appellant and to " * * * give the court an evaluation and conclusion of the mental condition * * * " of appellant.

The psychiatrist examined appellant for about two hours on November 7 and for approximately the same length of time on November 8. On Wednesday or Thursday, November 11 or 12, the psychiatrist told a representative of the prosecutor's office that he had determined that appellant was sane. This fact was reported to appellant's counsel by another representative of that office on Thursday or Friday, November 12 or 13. The report of the psychiatrist was not put in written form until Friday the 13, and was not filed with the court until Monday, November 16 as the trial was about to commence. Appellant's counsel filed a written motion for continuance on the same morning on the

---

1. The complete text of the statement or confession may be found in Hintz v. State, supra, 396 S.W.2d at p. 413.

ground that he had not had an opportunity to examine or study the results of the examination by the psychiatrist. He asserted that he was not responsible for the delay on the part of the court appointed psychiatrist in reporting his findings, and that a fair trial could not be had without an opportunity to examine and study the report. The motion was immediately overruled in the following language:

"Motion overruled and defense counsel given copy of psychiatrist evaluation report."

The examination by the psychiatrist was based on the two interviews with appellant. There is nothing in the report to indicate that the psychiatrist made any attempt to obtain the Veterans Administration records on appellant or the county court records or that he discussed appellant's condition with the two local doctors who diagnosed him in connection with his commitment under the order of the county court. There is nothing to indicate that these facts, or even the motion for examination of appellant, were ever called to his attention. The diagnosis was "Emotionally unstable personality, associated with antisocial tendencies and alcoholism." The report includes a statement " * * * that the basic disorder is a personality disturbance; its most important social symptom is the gravitation into unlawful or unacceptable conduct where destruction to himself and others ensue."

Defense counsel's position throughout has been that he needed help in interpreting the report. At any rate, the trial commenced and no issue was made as to appellant's mental condition in any respect. Defense counsel did discuss the matter with the psychiatrist on the third day of the trial. The psychiatrist testified on a motion for new trial and seemed to be under the impression that he could not discuss the matter with defense counsel prior to the trial without the approval of the court. His reasoning was that the court appointed him. He felt that he was permitted to discuss it with the prosecutor because the court in the appointing letter suggested that he obtain the facts from the prosecutor's office.

The state argues here, in a retrospective fashion, that good trial strategy dictated the course of appellant's counsel. The argument is that the defense thereby avoided having the note, supra, which appellant wrote prior to his arrest, admitted in evidence. This is a very weak argument in the light of the confession and the failure of the defense to show the jury any excuse whatever for appellant's conduct.

Appellant's counsel testified that he needed time to study the report and to attempt to evaluate it or have it evaluated and that he had a Veterans Administration psychiatrist available to testify for appellant provided time was afforded for the examination. In fairness to the state trial court, we point out that this latter fact was not called to the court's attention.

■ Undoubedly, the psychiatrist and the motion for continuance could have been pursued with more vigor. The need for the continuance, however, was stated in writing and the facts buttress the need for the continuance. The state court may have relied on the case of McIntyre v. State, 172 Tex.Cr.R. 510, 360 S.W.2d 875, cited on the Texas appeal of this case, Hintz v. State, supra, which holds that no error results from the denial of a motion to continue on the grounds that the report of a psychiatrist was not received prior to trial when the report shows that the accused is sane. With deference, our own view is that such a report may not obviate defendant's Federal constitutional right to have a lawyer who has an opportunity to prepare his defense and that this right would include time for studying and evaluating the report. Defense counsel did not have this here.

It was thus error for the trial court to deny the motion for continuance.

The right to counsel is an expanding concept in a developing jurisprudence in the sense that new areas are being brought within its scope as they are reached factually. This case must take its place in that development but its holding is hardly new. It is no more than that which Powell v. State of Alabama, supra, holds.

The judgment of the District Court is reversed and the cause remanded for the entry of a judgment in accordance with the holdings of this opinion and for further proceedings not inconsistent herewith.