**Leonard N. BASTIDA, Petitioner,**

v.

**Mathew S. BRANIFF, Jim Garrison, Shirley G. Wimberly, Jr., and Louis A. Heyd, Jr., Respondents.**

**Misc. No. 1758.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Dec. 30, 1970.

George M. Strickler, Jr., John P. Nelson, Jr., New Orleans, La., for petitioner.

Numa V. Bertel, Jr., Asst. Dist. Atty., Parish of Orleans, for respondents.

CASSIBRY, District Judge:

■■ On a previous petition for habeas corpus relief, this Court concluded that Leonard N. Bastida had been denied his constitutional right to effectively confront and cross-examine a witness against him in the state trial which resulted in his conviction for simple burglary. The State was accordingly order-

ed to vacate Bastida's judgment of conviction, reinstate his plea of not guilty and schedule a retrial within sixty days, failing which this Court would discharge him from custody. Bastida v. Henderson, Misc. No. 1549 (E.D.La. May 5, 1970). The State chose to retry Bastida, and he was again convicted on May 28, 1970. Bastida has again petitioned this Court for release from state custody and other affirmative relief on the ground that his reconviction was obtained in violation of his constitutional rights and this Court's order in Bastida v. Henderson, *supra*. The constitutional issues raised here have been sufficiently presented to and rejected by the Louisiana Supreme Court;[1] the petition is properly before the Court. 28 U.S.C. §§ 2241 (c) (3), 2254.

I.

The background facts in this case are essentially as follows: On September 9,

---

[1]. Although the State has not formally raised the question of exhaustion of state remedies, in view of Judge Braniff's charge of "federal intrusion", *infra*, I deem it best to express my view on this issue.

This is the second time around for Bastida in this Court. On the prior occasion I found that there had been an adequate exhaustion of state remedies and decided the merits of the petition. The writ was sustained and the State was given the choice of either retrying petitioner within sixty days or releasing him from custody. At that time, the State had ample opportunity to appeal this Court's determination on the question of exhaustion and also on the merits. The State elected not to appeal but rather to retry petitioner.

One of the three substantive grounds advanced by petitioner in his present petition for granting of the writ is essentially the same as that presented in the previous habeas application, i. e., the denial of petitioner's right to effectively confront and cross-examine a witness against him. As pointed out in Bastida v. Henderson, supra, footnote 1, petitioner sought writs from the Louisiana Supreme Court on Judge Braniff's refusal to allow his attorney to inquire into the conviction record of the prosecution's key witness because he was a juvenile. That Court denied writs, and petitioner subsequently sought and obtained relief in this Court. Now, after he has been retried and again convicted, petitioner alleges that he was again denied his constitutional right to effectively cross-examine and impeach the same juvenile witness because he was denied access to the juvenile's conviction record. Certainly this in substance is the same constitutional issue previously presented to and rejected by the Louisiana Supreme Court.

The second ground advanced for habeas relief is the denial of petitioner's three separate motions for a continuance, based on the lack of sufficient time to adequately prepare a defense and the unavailability of the transcript of a prior suppression hearing. After petitioner's second such motion was denied by Judge Braniff on May 25, 1970, petitioner applied to the Louisiana Supreme Court for writs of mandamus and prohibition to require Judge Braniff to grant the continuance. Writs were denied on May 27.

As a third ground for relief, petitioner contends Judge Braniff erred in denying, without a hearing, his motion to suppress an incriminating statement and in refusing to allow him to testify before the jury on the limited issue of voluntariness of that statement. It is conceded by petitioner that he has not presented this issue to the Louisiana Supreme Court. The purported incriminating statement was not used at petitioner's first trial; therefore, there was no occasion for petitioner to pursue the matter in the collateral attack of his original conviction. In view of petitioner's exhaustion of his other grounds, justice would seem to require that I act on the petition without requiring petitioner to retrace his steps through the state courts. See Dove v. Peyton, 343 F.2d 210, 213 (4th Cir. 1965). Moreover, since this third ground plays no part in my decision to sustain the writ [see Part III of this opinion, *infra*], the failure to exhaust this one issue should be excused.

Under these circumstances I feel that petitioner has adequately exhausted his state remedies and his petition is properly before the Court. In any event, the doctrine of exhaustion of state remedies, embodied in 28 U.S.C. § 2254, is rooted in comity and does not rise to jurisdictional proportions. United States ex rel. Gockley v. Meyers, 411 F.2d 216, 219 (3d Cir. 1969). "If the case is sufficiently exceptional the doctrine need not be rigidly followed to the point of inflicting manifest injustice." *Id.* at 219. *Cf.* Beto v. Martin, 396 F.2d 432, 434 (5th Cir. 1968).

1966, Leonard N. Bastida was charged by bill of information with simple burglary in violation of LSA–R.S. 14:62. His case was allotted to Section "B" of the Criminal District Court for the Parish of Orleans, presided over by Judge Matthew S. Braniff. Bastida pleaded not guilty and his trial was set for November 29, 1966. Shortly before the date of trial, an impasse arose between Bastida and his attorney because of the attorney's advice that he plead guilty. Unable to resolve their differences, Bastida dismissed his attorney and retained new counsel. Feeling that he was unable to prepare an adequate defense in the time remaining before trial, Bastida's new counsel appeared in court on the day set for trial and moved for a continuance. In response, Judge Braniff threatened to raise Bastida's bail substantially if he persisted in his request for a continuance. Because of his inability to raise the threatened bond and his fear of incarceration in Orleans Parish Prison, Bastida instructed his attorney to withdraw the motion for a continuance and proceed with the trial.

The State's case against Bastida at this original trial consisted almost entirely of the testimony of a juvenile accomplice, Jeffrey Billeaud, who admitted complicity in the burglary and incriminated Bastida. Because Billeaud was a juvenile and under Louisiana law could not technically be "convicted" of a crime, and because only "convictions" may be used to impeach the credibility of a witness, Judge Braniff refused to allow Bastida's attorney to question Billeaud as to his previous juvenile record. Bastida was convicted by the jury and sentenced to serve nine years at hard labor, the maximum sentence under state law. Bastida appealed from this conviction, but the appeal was subsequently withdrawn when an assistant district attorney threatened to "double bill" Bastida under LSA–R.S. 15:529, and thus expose him to a doubling of his nine year sentence. See Bastida v. Henderson, *supra*, footnotes 1 and 3.

In September, 1968, Bastida petitioned the Criminal District Court for a writ of habeas corpus, alleging violation of his constitutional rights by the actions of Judge Braniff and the District Attorney's office. Among the issues raised in the petition was the effective denial of Bastida's motion for a continuance by Judge Braniff, and the denial to Bastida of the right to effectively cross-examine and impeach the testimony of the prosecution's juvenile witness. As prescribed by the rules of the Criminal District Court, the habeas petition was allotted to Judge Braniff's section, where a hearing was conducted on October 25, 1968. Although the evidence adduced at this hearing pertained only to the constitutional issues involved, and not to the circumstances of the burglary or to Bastida's guilt or innocence, at the conclusion of the hearing Judge Braniff made no findings of fact or conclusions of law on the constitutional questions, but merely reaffirmed his belief in Bastida's guilt and denied the petition. An application to the Louisiana Supreme Court for writs was denied in January, 1969, with the comment that "[t]he showing made does not warrant the exercise of our original or supervisory jurisdiction." 253 La. 303, 217 So.2d 406.

Bastida subsequently petitioned this Court for a writ of habeas corpus, which was granted on May 5, 1970, on the ground that he had been denied the right to effectively confront and cross examine the State's key witness against him. Bastida v. Henderson, *supra*. On May 14, 1970, Judge Braniff issued a "Per Curiam" order severely criticizing this Court for granting the writ and directing that Bastida would be retried before him on May 28, 1970. Bastida was reconvicted on that date of simple burglary and was sentenced to serve five years and ten months at hard labor in the state penitentiary. A motion for a new trial was denied. A motion for appeal was filed and accepted, but Judge Braniff ruled that Bastida will receive no credit for any time served in Parish Pris-

on awaiting his appeal. The present petition for habeas relief was filed on July 8, 1970; an evidentiary hearing was held on September 9, 1970. On December 1, 1970, after making several futile requests to the State to furnish this Court with a copy of the complete transcript of the second trial, I ordered the State to produce the transcript within fifteen days or the writ would be sustained. The State filed a motion in Judge Braniff's court for the production of the transcript in accordance with that order. Judge Braniff denied the motion on the ground that he was without jurisdiction because the order of appeal had been signed. Judge Braniff also again castigated this Court for what he termed "federal intrusion." The State has since filed a motion in this Court to vacate that portion of the December 1, 1970 order which would sustain the writ unless the transcript is furnished within the time specified.

This Court has a statutory obligation to conduct a plenary inquiry into the constitutional issues raised by the petition for writ of habeas corpus in order to "determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243; Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963). Petitioner has made several allegations and has offered oral testimony and other evidence in support thereof which, if true, would require this Court to set aside his conviction. At the evidentiary hearing conducted in this matter, the State did not call a single witness to rebut the evidence introduced by the petitioner, but instead was content to let the transcript of the retrial speak for itself. Now the State has refused to furnish that same transcript to this Court. Under these circumstances I feel justified in sustaining the writ on that basis alone; but there are more compelling reasons why the writ must be sustained.

## II.

The evidence shows that after Judge Braniff issued his "Per Curiam" order on May 14, 1970, directing that Bastida would be retried on May 28, 1970, petitioner's mother contacted Mr. George Strickler, who had been appointed by this Court to represent petitioner in his first habeas action, concerning representation of petitioner at his retrial. Mr. Strickler advised petitioner's mother that he thought a more experienced criminal trial attorney should be retained to represent her son. Mr. John P. Nelson was retained by Bastida on Tuesday, May 19, 1970, to represent him at his retrial. Because of previous commitments, Mr. Nelson found that he would be unable to adequately prepare a defense in the short time remaining before trial and he immediately appeared before Judge Braniff and moved for a continuance of three weeks, or until June 9, 1970. This motion was denied.

During the conference of May 19, Mr. Nelson was informed for the first time that prior to Bastida's first trial a suppression hearing had been conducted on an incriminating statement allegedly made by Bastida to the arresting officers, that the statement had been ruled admissible by Judge Braniff and, although it had not been used at the first trial, the statement would be introduced at the May 28 trial. Mr. Nelson requested that he be furnished a copy of the transcript of that hearing and Judge Braniff assured him that it would be made available to him very quickly. Mr. Nelson was also informed at this time that Jeffrey Billeaud would again testify for the State.

On May 21, 1970, Mr. Nelson filed a second motion for a continuance on the ground previously urged and, in addition, on the ground that the suppression hearing transcript was still not available. Judge Braniff took this motion under advisement and finally denied it on the morning of May 25. Petitioner applied to the Louisiana Supreme Court for a writ of prohibition and mandamus to require Judge Braniff to grant the continuance.

On May 26, 1970, Mr. Nelson filed a motion to suppress the alleged incrimi-

nating statement. Judge Braniff denied this motion the next day without a hearing on the ground that the statement had already been ruled admissible at the previous hearing and "that transcript is available".[2] On the same day, May 27, the Louisiana Supreme Court denied petitioner's application for writs and stated that "[i]t does not appear that the trial judge has abused his discretion in denying the motion for a continuance." 256 La. 83, 235 So.2d 102. Justice Mack E. Barham, dissenting, was of the opinion the writ should be granted.

On the morning of May 28, approximately ten minutes before trial was to begin, Mr. Nelson was handed a fifty-five page transcript of the suppression hearing. He testified that he was unable to do more than glance over the transcript prior to the start of the trial. He again moved for a continuance, which Judge Braniff denied.

At the evidentiary hearing in this Court, Mr. Nelson testified that the State's case against Bastida on May 28 consisted essentially of the testimony of Jeffrey Billeaud concerning the alleged participation of petitioner in the burglary, and the testimony of two police officers who arrested Bastida concerning incriminating statements allegedly made to them by Bastida. Certain physical evidence was also introduced.

Mr. Nelson further testified that because of his inability to carefully study the suppression transcript before trial, he was unable to adequately cross-examine the two police officers who testified at the trial. Mr. Nelson stated that certain statements made by these officers during the trial differed materially from testimony they had given at the suppression hearing, but that these inconsistencies could only have been discovered by a careful reading of the suppression transcript prior to trial. He also stated that certain rebuttal witnesses would have been called if there had been sufficient time to review the transcript before trial.

■ Since the State did not offer rebuttal evidence in this matter and has refused to furnish a copy of the second trial transcript to this Court, the testimony of Mr. Nelson stands uncontradicted and must be accepted as true.

In Hintz v. Beto, 379 F.2d 937 (5th Cir. 1967), the District Court denied habeas relief to a Texas state prisoner. Counsel had been appointed in April, 1964, to represent the petitioner in his state trial. The trial was set for November 16, 1964. On June 5, counsel moved to have the petitioner examined to determine his mental competency. The state court granted this motion on June 8 and, on October 26, appointed a psychiatrist to examine the petitioner.

---

2. In denying the motion for a continuance, Judge Braniff commented orally from the bench:

"I can tell you this, Mr. Nelson and Mr. Strickler, that since we have already tried a Motion to Suppress, and since that transcript is available, I certainly will not entertain another motion to suppress. That would be wasting time. Your rights under the prior motion have been preserved by the attorney who represented him [Bastida] at that time. And, there is no law that says that you have to have a new motion to suppress every time he changes lawyers. Because, a defendant could therefore change lawyers after every time the preliminary motions are tried to avoid trial. The State was ordered by the Federal Court to try this case forthwith, and that's the way it is going to be."

Of course the transcript was, in fact, not available to petitioner's counsel at the time Judge Braniff made the above ruling on May 27. Also, Judge Braniff seemed to have missed counsel's point altogether. It is quite obvious that there is no requirement that a defendant be afforded a new hearing on a motion to suppress every time he changes lawyers. But what counsel for petitioner argued is that when a conviction has been vacated and a plea of not guilty reinstated by order of a federal court on a habeas corpus petition, the petitioner is entitled to a *complete* new trial, including the right to a new hearing on a motion to suppress. While there may be some merit to counsel's argument, I believe that where a transcript of the previous suppression hearing is available and is furnished to counsel, there is no constitutional requirement that a new hearing be afforded.

The examination took place on November 7 and 8, and the psychiatrist orally informed the prosecutor on November 11 or 12 that the petitioner was mentally competent. This fact was reported to petitioner's counsel by the prosecutor on November 12 or 13. The psychiatrist did not put his report into written form until Friday, November 13, and did not file the written report with the Court until Monday, November 16, as the trial was about to commence. Petitioner's counsel moved for a continuance on the ground that he had not had an opportunity to study the written report. He argued that he was not responsible for the delay on the part of the psychiatrist in filing the report and that a fair trial was not possible unless he had an opportunity to examine and study the report. The state court overruled the motion, and the petitioner went to trial and was convicted. The Fifth Circuit, in reversing the District Court's denial of the writ, stated:

> "* * * The right to counsel afforded under the Sixth Amendment means the effective assistance of counsel and effective assistance requires time for preparation. Powell v. State of Alabama, 1932, 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158; Roberts v. United States, 5 Cir., 1963, 325 F.2d 290. Time for preparation, where mental competency is in question and there is a fair factual basis as here for the question, would at least include a reasonable time within which to have a defendant examined, and for preparation of such defense as might be based on the facts developed by the examination. * * *" 379 F.2d at 941.
> "* * * [S]uch a report may not obviate defendant's Federal constitutional right to have a lawyer who has an opportunity to prepare his defense

and * * * this right would include time for studying and evaluating the report. Defense counsel did not have this here.

> "It was thus error for the trial court to deny the motion for continuance. *The right to counsel is an expanding concept in a developing jurisprudence in the sense that new areas are being brought within its scope as they are reached factually.* This case must take its place in that development but its holding is hardly new. It is no more than that which Powell v. State of Alabama, supra, holds." (Emphasis added.) 379 F.2d at 942, 943.

In this case, counsel for Bastida moved on three separate occasions for a short continuance.[3] The second and third motions, filed on May 21 and on the morning of trial, were based in part on the fact that the transcript of the prior suppression hearing had not been furnished a reasonable length of time before trial. This transcript was crucial to Bastida's defense and became all the more important when Judge Braniff refused to hold another hearing on the admissibility of the statements.[4] Certainly the transcript was as important to Bastida as the psychiatrist's report was to the defense in *Hintz*. The fact that the transcript was not available until moments before the trial was through no fault or lack of diligence on the part of Bastida or his counsel.

In Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the Supreme Court stated:

> "It is true that great and inexcusable delay in the enforcement of our criminal law is one of the grave evils of our time. Continuances are frequently granted for unnecessarily long periods of time, and delays incident to the disposition of motions for new trial and hearings upon appeal have

---

3. Petitioner's counsel emphasized to Judge Braniff that he was asking only for a short continuance and not seeking to have the trial continued beyond the date of Jeffrey Billeaud's departure on June 13, 1970 for military duty overseas.

4. This is not to say that another hearing was required, see footnote 2, *supra*. But since there was no new hearing afforded it was imperative that petitioner's counsel be furnished the prior transcript.

come in many cases to be a distinct reproach to the administration of justice. *The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob.*" (Emphasis added.) 287 U. S. at 59, 53 S.Ct. at 60.

■ Admittedly, the facts in *Powell* were much more unconscionable than those in this case. But *Powell* was decided in 1932. The right to effective assistance of counsel is "an expanding concept" which adapts to new fact situations as they arise. Hintz v. Beto, *supra*, 379 F.2d at 943. Judge Braniff's obstinate refusal to grant even a short continuance, in light of the State's failure to make the suppression transcript available until moments before trial and the denial of a new suppression hearing, make it clear that this case was pressed forward not "in the calm spirit of regulated justice" but in utter disregard of petitioner's constitutional right to effective assistance of counsel. Powell v. Alabama, *supra*, 287 U.S. at 59, 53 S.Ct. at 60. The writ must be sustained.

### III.

Because the State may once again decide to retry Bastida, petitioner's remaining contentions must be considered.

During the first trial in 1966, petitioner's attorney was not permitted to question the prosecution's key witness, a juvenile, as to his past convictions because under LSA–R.S. 13:1570, 1580, a juvenile cannot be "convicted" of other than a capital offense and only evidence

of "convictions" can be used to impeach a witness under LSA–R.S. 15:495. In Bastida v. Henderson, *supra*, I said:

"The State may not deny important constitutional rights simply by 'labelling' them away. It is mere semantics to say that a defense attorney may not inquire into the prior "convictions" of a juvenile because literally there are no convictions. Laudable as Louisiana's purpose to protect juveniles may be, it cannot be accomplished at the expense of a fair trial to another who is on trial for his liberty. * * * This Court now holds that inquiry into prior criminal convictions of a juvenile (or, if you will, 'adjudications of guilt') for the purpose of impeaching the credibility of an important prosecution witness is a critical and indispensable part of the Sixth Amendment right of confrontation and cross-examination. The jury ought to know whether one upon whom they would rely for the most serious of decisions is a choirboy or a hoodlum. * * * *"

In petitioner's retrial, although his counsel was permitted to question Jeffrey Billeaud about his past convictions or adjudications of guilt, Judge Braniff refused a subpoena duces tecum intended to obtain the juvenile record [5] of Billeaud. It appears that if Billeaud had been an adult, petitioner's counsel could have easily secured his prior conviction record. Petitioner contends that the whole tenor of this Court's decision in Bastida v. Henderson, *supra*, was that a criminal defendant cannot constitutionally be placed at a disadvantage merely because the witness against him happens to be a juvenile rather than an adult.

■ It is unnecessary, however, to reach this constitutional question because the error, if it was error, was in this instance "harmless beyond a reasonable doubt." Chapman v. California, 386

---

5. Petitioner's counsel had been denied access to Billeaud's juvenile record by the juvenile authorites. Counsel testified that he was not interested in the entire file on Billeaud's juvenile activities, but only wanted to know the nature of any convictions ("adjudications of guilt") and their date.

U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). This finding of harmless error is based on the partial transcript introduced at the evidentiary hearing in this Court, which discloses that petitioner's counsel elicited from Billeaud essentially what he wanted to show by the conviction record, i. e., that Billeaud was certainly no "choirboy." Billeaud was effectively impeached by his own admissions regarding his past criminal activities.[6]

6. The partial transcript introduced at the evidentiary hearing on this writ contains the testimony of Jeffrey Billeaud at petitioner's retrial on May 28, 1970. As to his prior criminal activities, the following testimony was elicited:

"BY MR. NELSON:
Q. Jeffrey, before you were 17, how many times were you arrested?
BY MR. WIMBERLY:
Objection, Your Honor.
BY THE COURT:
Objection sustained.
BY MR. WIMBERLY:
He knows better than that.
BY MR. NELSON:
Q. How many times were you convicted of juvenile delinquency before you were 17 years old?
A. Excuse me?
Q. How many time were you convicted of being a juvenile delinquent before you were 17 years old?
BY MR. WIMBERLY:
Don't answer that, Jeffrey.
I have no objection to the question, but I would like the predicate laid. I would like counsel to first ask, if he has been convicted, not how many times.
BY MR. NELSON:
Q. Were you convicted before you were 17 years old of any crime?
A. Yes.
Q. How many times?
A. Once.
Q. Where?
BY THE COURT:
Q. In New Orleans?
A. Right, in New Orleans.
BY MR. NELSON:
Q. Of what?
A. Burglary.
Q. Was this before or after this incident?
A. Before.
Q. Now, Jeffrey, I understand that on this particular night, you went into this place twice is that right?
A. Right.
Q. You went in the first time by yourself, is that right?
A. Right.
Q. And, you went in to see if you could find some money in these files, is that right?
A. Yes sir.

Q. And, you had a key that was given to you by Dennis Purcell, is that right?
A. Yes sir.
Q. Now, you had been in this place before this occasion, on a number of occasions, had you not?
A. Yes sir.
Q. In fact, about five times before this, isn't that right?
A. Right.
Q. And, you took envelopes and money on these other occasions that you went in, isn't that right?
A. Yes sir.
Q. Now, on this one time, on this particular night, you went in to get envelopes and money, is that right?
A. Yes sir.
     *     *     *     *     *
Q. Now, I understand that the second time that you went in on this night, that you were there when the files were being opened, is that right?
A. Right.
Q. And, that you knew exactly what these two men were going to do when they went in. You knew what they were going there to do. Is that your testimony?
A. Yes.
     *     *     *     *     *
Q. Were you sentenced to any sentence as a result of this burglary?
A. Was I?
Q. Yes.
A. What do you mean?
Q. Well, were you sent to a reformatory?
A. No.
Q. Were you taken up before a Juvenile Judge as a result of this burglary?
A. No.
Q. And, you had been before this burglary, you had served time in effect, hadn't you?
A. Right.
Q. And, you served time because of a burglary that you had committed.
A. Right.
     *     *     *     *     *
Q. Were you ever placed in a Juvenile Home, convicted of possessing a weapon, Jeffrey?
A. No.
Q. Were you ever called before a judge because you possessed a weapon?

■■ Petitioner further contends he was denied due process of law by Judge Braniff's refusal to allow him to testify before the jury on the limited issue of voluntariness of an incriminating statement. This precise question has been previously decided adversely to petitioner. See United States ex rel. Goins v. Sigler, 162 F.Supp. 256, 259 (E.D.La. 1958), aff'd 272 F.2d 148 (5th Cir. 1959). Moreover, the Fifth Circuit has indicated that a defendant's rebuttal testimony in connection with the admissibility of a confession should properly take place outside the presence of the jury. Turner v. United States, 387 F.2d 333, 334 (5th Cir. 1968); cf. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

### IV.

■■ Petitioner also seeks to restrain Judge Braniff and Assistant District Attorney Wimberly from participating in his trial in the event the State decides to retry him. In appropriate circumstances, Federal Courts have directed that retrial be before a judge other than the one who presided over the original trial. See Calvaresi v. United States, 348 U.S. 961, 75 S.Ct. 522, 99 L.Ed. 749 (1955); Blunt v. United States, 100 U.S. App.D.C. 266, 244 F.2d 355, 368 (1957); Naples v. United States, 113 U.S.App. D.C. 281, 307 F.2d 618, 631 (1962). "Federal Courts, in their habeas role, have the power and duty to fashion appropriate relief 'as law and justice require'." Byrd v. Smith, 407 F.2d 363, 366 (5th Cir. 1969); 28 U.S.C. § 2243.

Petitioner was pressured into withdrawing a motion for a continuance of his original trial by Judge Braniff's threat to substantially raise his bond if he persisted. After being convicted, petitioner was coerced to abandon his appeal by representations that he would be "double-billed" and sentenced to double his original sentence. Defendant Wimberly also threatened to "double-bill" petitioner if he was successful in this Court and then reconvicted. Judge Braniff further attempted to persuade petitioner to forego his efforts in this Court by

A. No.
Q. How many times were you called before a Juvenile Judge?
BY MR. WIMBERLY:
Your Honor, he's going into arrests, and he knows that you can't ask that of any witness. The State objects.
BY THE COURT:
Objection is sustained. You may ask about convictions, but not arrests. That's the law.
BY MR. NELSON:
Q. Do you know what a conviction is, Jeffrey?
A. Of what?
Q. When a juvenile is convicted. Do you know what that means?
A. No.
Q. So, you would not know what I'm asking if I mention the word, conviction, do you?
A. It would be more or less that I was charged, right?
BY THE COURT:
Q. No, son, a conviction means that you were found guilty, or else pleaded guilty. Now, were you ever found guilty by a Juvenile Judge, or did you ever plead guilty before a Juvenile Judge?

A. A lot of times for loitering and skipping school.
BY MR. NELSON:
Q. Have you ever been in the school in Monroe?
A. Yes, that is where I spent my time.
Q. Was that since, before, or after this incident?
A. I don't recall. It might have been before, it might have been after.
Q. In other words, you were sent to Monroe by a Juvenile Court is that right?
A. Right.
Q. And, you don't know whether you were sent before or after this incident.
A. Right, I don't remember when it was.
BY THE COURT:
Q. How many times were you sent to Monroe, son?
A. Once.

\* \* \* \* \*

BY MR. NELSON:
Q. Incidently, you said you had been in there about how many times before this incident?
A. About 9 or 10 times.
Q. And, you got money about 7 or 8 of these times, isn't that right?
A. Right."

promising not to oppose his parole the next time he became eligible.[7] In addition, Judge Braniff and D. A. Wimberly have both expressed extreme hostility toward this Court for granting relief to petitioner and toward petitioner for seeking such relief. A further indication of Judge Braniff's attitude toward Bastida is found in his oral reasons dictated from the bench after the state habeas hearing. In denying the writ, Judge Braniff made no findings of fact or conclusions of law with respect to the constitutional issues involved, but instead merely reaffirmed his belief in Bastida's guilt. Judge Braniff's two written responses to the orders of this Court, in which he criticized this Court for "federal intrusion" and referred to Bastida as a "pimp and church-thief", only lend credence to the allegation of bias and prejudice. So too does his adamant refusal to furnish this Court the transcript of petitioner's retrial. While comity between federal and state judicial systems is to be fostered, comity cannot be sought at the expense of the federally protected right of criminal defendants to receive due process of law and a fair trial in state courts. Law and justice require that if Bastida is retried by the State, Judge Braniff and Assistant District Attorney Wimberly not participate in that trial.

Petitioner's final claim relates to the sentence he received after his reconviction. He contends that the new sentence of five years and ten months, when added to the time he served on the first sentence, equals a longer sentence than the maximum permissable under state law. Petitioner also contends he should be given credit for time spent in Parish Prison pending his appeal. It is not apropos to consider these contentions at this time since petitioner will receive a new sentence if he is retried and again convicted. I will point out parenthetically, however, that petitioner certainly must receive credit for time served under the two invalid convictions.

## ORDER

The Writ is sustained. Unless, within ten (10) days from the date of this Order the State on its own motion vacates the judgment of conviction, reinstates petitioner's plea of not guilty, and schedules a retrial within sixty (60) days from the date of this Order, the petitioner shall be discharged from custody. Heyd v. Brown, 406 F.2d 346 (5th Cir. 1969). In the event the State decides to retry petitioner in accordance with this Order, the defendant Matthew S. Braniff is restrained from presiding over or otherwise participating in such retrial and the defendant Shirley G. Wimberly, Jr. is restrained from prosecuting or otherwise participating in such retrial.

It is so ordered.

---

7. In regard to discouraging of the writ of habeas corpus, see Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), in which the Supreme Court commented:

"This Court has constantly emphasized the fundamental importance of the writ of habeas corpus in our constitutional scheme, and the Congress has demonstrated its solicitude for the vigor of the Great Writ. The Court has steadfastly insisted that 'there is no higher duty than to maintain it unimpaired.' Bowen v. Johnston, 306 U.S. 19, 26, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939).

"Since the basic purpose of the writ is to enable those unlawfully incarcerated to obtain their freedom it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed, * * *." (Footnotes omitted.) 393 U.S. at 485, 89 S.Ct. at 749. Cf. Ex parte Hull, 312 U.S. 546, 549, 61 S.Ct. 640, 85 L.Ed. 1034 (1941).